No. 22-60245

---

In the United States Court of Appeals
for the Fifth Circuit

---

AFFORDABLE CARE, L.L.C.

*Plaintiff-Appellant*

V.

RAELINE K. MCINTYRE, DMD; RAELINE K. MCINTYRE, DMD, P.C.,

*Defendants-Appellees*

---

On Appeal from the United States District Court for the
Southern District of Mississippi
(Case No. 1:21-cv-85-TBM-RPM)
The Hon. Judge Taylor McNeel, Presiding

---

**BRIEF OF APPELLANTS**

---

MEREDITH A. MAYBERRY (MB #101796)
NANCY A. CUNDIFF (LSBA #27974)
DAVID A. CAMPBELL (OH B #0066494)
CAROLINE J. SANCHES (LSBA #32975)
LEWIS BRISBOIS BISGAARD & SMITH LLP
400 Poydras Street, Suite 1300
New Orleans, Louisiana 70130
Telephone: 504-302-4100
Facsimile: 504-754-7569
Email: meredith.mayberry@lewisbrisbois.com
nancy.cundiff@lewisbrisbois.com
david.campbell@lewisbrisbois.com
caroline.sanches@lewisbrisbois.com

STEPHEN B. SIMPSON
PURVIS @ CO. PLLC
14110 Airport Road, Suite A
Gulfport, Mississippi 39503
Telephone: 228-206-7174
Facsimile: 601-510-7794
Email: ssimpson@purviscolaw.com

*Attorneys for Affordable Care, LLC*

<u>CERTIFICATE OF INTERESTED PERSONS</u>

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Fifth Circuit 28.2.1, have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

A.  Parties:

      Plaintiff/Appellant:      Affordable Care, LLC

      Defendant/Appellee:      Raeline K. McIntyre, DMD and Raeline K. McIntyre, MDM, P.C.

B.  Attorneys:

      Plaintiff/Appellant:      Meredith A. Mayberry
meredith.mayberry@lewisbrisbois.com
Nancy A. Cundiff
nancy.cundiff@lewisbrisbois.com
David A. Campbell
david.campbell@lewisbrisbois.com
Caroline J. Sanches
caroline.sanches@lewisbrisbois.com
LEWIS BRISBOIS BISGAARD & SMITH, LLP
400 Poydras Street, Suite 1300
New Orleans, Louisiana 70130
Telephone: 504-302-4100
Facsimile: 504-754-7569

and

Stephen B. Simpson
ssimpson@purviscolaw.com

PURVIS & CO., PPLC
14110 Airport Road, Suite A
Gulfport, Mississippi 39503
Telephone: 228-206-7174
Facsimile: 601-510-7794


Defendants/Appellees:     K.C. Hightower
                          kchightower@balch.com
                          Katie Hood
                          khood@balch.com
                          BALCH & BINGHAM, LLP
                          1310 Twenty Fifth Avenue
                          Gulfport, Mississippi 39501
                          Telephone: 228-864-9900
                          Facsimile: 228-864-8221

C.     Other Interested Parties/Persons:

       Additional counsel for Defendants/Appellees in the arbitration related to
       this matter:
       Paul Sun and Kelly Margolis Dagger
       Ellis & Winters, LLP
       4131 Parklake Avenue Suite 400
       Raleigh, NC 27612

       The ruling arbitrator in the underlying matter:
       Charles R. Holton
       Clinical Professor of Law
       Director, Civil Justice Clinic
       Duke University School of Law
       210 Science Drive | Durham, NC 27708


DATED:     July 5, 2022          /s/   *Nancy A. Cundiff*
                                       NANCY A. CUNDIFF

## STATEMENT REGARDING ORAL ARGUMENT

Appellant, Affordable Care, LLC, respectfully requests oral argument in accordance with Federal Rule of Appellate Procedure 34 and Fifth Circuit Rule 28.2.3.  This case concerns the evident-partiality standard in arbitration cases. Oral argument is necessary because this is a fact-intensive case.  As a panel of this Court stated, "the caselaw in this area is confusing and complicated" and this Court has not definitively addressed the scope of this standard. *Positive Software Solns., Inc. v. New Century Mortgage Corp.*, 436 F.3d 495, 499 (5th Cir. 2006), reh'g en banc granted 2006 U.S. App. LEXIS 11773 (May 5, 2006).

# TABLE OF CONTENTS

**CERTIFICATE OF INTERESTED PERSONS**.................................................**2**

**STATEMENT REGARDING ORAL ARGUMENT** ...........................................**4**

**JURISDICTIONAL STATEMENT**.....................................................................**11**

**STATEMENT OF THE ISSUES**.........................................................................**12**

INTRODUCTION..................................................................................................13

I.    Statement of the Relevant Facts.................................................................16

    A.    The Arbitration Arose Out of a Services Contract Between a Dental Support Organization and a Dental Practice......................................16

    B.    Appellees Unlawfully Terminated the MSA ...........................................18

    C.    Just Seven Weeks Before Arbitration, Appellees Retained Additional Counsel, and Sought a Continuance ...............................................20

    D.    Arbitrator Holton's Decision Adopted Appellees' Brief, Virtually Wholesale...........................................................................................26

    E.    Arbitrator Holton Rejected The District Court's Legal Holdings ...........27

    F.    Arbitrator Holton and Attorney Paul Sun Failed to Disclose Their Close Connections...................................................................................28

    G.    Affordable Independently Learned of the Conflict After Arbitrator Holton Issued His Decision ..............................................................29

    H.    Appellees Have Still Not Provided A Reason For the Non-Disclosure ..30

II.    Statement of the Case...............................................................................30

III.    Statement of the Standard of Review .....................................................32

IV.    Summary of Argument ...........................................................................33

V.    Argument .................................................................................................33

CONCLUSION .....................................................................................................65

**CERTIFICATE OF SERVICE** .........................................................**67**

**CERTIFICATE OF COMPLIANCE WITH THE TYPE-VOLUME LIMIT 68**

**CERTIFICATE OF ELECTRONIC COMPLIANCE** .....................................**69**

## TABLE OF AUTHORITIES

**Federal Cases**

*21st Century Fin. Servs., LLC v. Manchester Fin. Bank, 747 F.3d 331*
    *(5th Cir. 2014)* .............................................................33, 34

*Ameser v. Nordstrom, Inc., 442 F. App'x 967 (5th Cir. 2011)* ...............47

*Barahona v. Dillard's Inc., 376 F. App'x 395 (5th Cir. 2010)*................36

*Bisby v. Garza, 342 F. App'x 969 (5th Cir. 2009)* ..................................62

*Carlos Abreu Viltres v. Duke University, Durham County, General*
    *Court of Justice, Superior Court Division, File No. 21 CVS 1869* ..................39

*Citigroup Glob. Mkts. Inc. v. Bacon, 562 F.3d 349 (5th Cir. 2009)* .......................32

*Cooper v. WestEnd Capital Mgmt., LLC, 832 F.3d 534 (5th Cir. 2016)* ..........34, 46

*Commonwealth Coatings Corp. v. Cont'l Cas. Co., 393 U.S. 145, 89*
    *S.Ct. 337, 21 L.Ed.2d 301 (1968)* ........................................ 13, 16, 35, 44, 50, 51

*Container Prods., Inc. v. United Steelworkers of Am. & its Local*
    *5651, 873 F.2d 818 (5th Cir. 1989)* ..................................................57

*Dealer Comput. Servs. v. Michael Motor Co., 485 F. App'x 724 (5th*
    *Cir. 2012)* .......................................................................................46

*Delta Queen S.B. Co. v. Dist. 2 Marine Eng'rs & Beneficial Ass'n,*
    *etc., 889 F.2d 599 (5th Cir. 1989)* ..................................................59

*EEOC v. HWCC-Tunica, Inc., 2008 U.S. Dist. LEXIS 85830 (N.D.*
    *Miss. Oct. 6, 2008)* ..........................................................................63

*Estate of Boles v. Nat'l Heritage Realty, Inc.,* 2010 U.S. Dist. LEXIS
51604 (N.D. Miss. May 20, 2010) .......................................................62

*Exxon Mobil Corp. v. Paper, Allied-Industrial Chem. & Energy
Workers Int'l Union, Local 4-12,* 383 F. Supp. 2d 877 (M.D. La.
2005) ..................................................................................................59

*New Regency Prods., Inc. v. Nippon Herald Films, Inc.,* 501 F.3d
1101, 1105-06 (9th Cir. 2007) ...........................................................45

*N.Y. Stock Exch. Arbitration between Fahnestock & Co. v. Waltman,*
935 F.2d 512 (2d Cir. 1991) ...............................................................58

*Middlesex Mut. Ins. Co. v. Levine,* 675 F.2d 1197, 1200 (11th Cir.
1982) ..................................................................................................45

*Forsythe Int'l, S.A. v. Gibbs Oil Co.,* 915 F.2d 1017 (5th Cir. 1990) ....................36

*Goswami v. DePaul Univ.,* 8 F. Supp. 3d 1004 (N.D. Ill. 2014) .......................50, 51

*Gulf Coast Indus. Workers Union v. Exxon Co., USA,* 70 F.3d 847
(5th Cir. 1995) ..............................................................................54, 55

*Hall St. Assocs., L.L.C. v. Mattel, Inc.,* 552 U.S. 576, 128 S.Ct. 1396,
170 L.Ed.2d 254 (2008) .............................................................33, 34, 37, 58

*Harris v. Parker Coll. of Chiropractic,* 286 F.3d 790 (5th Cir. 2002) ..................35

*Hickman v. Taylor,* 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947) ..................63

*ICAP Corporates, LLC v. Drennan,* 2015 WL 10319308, at *6 (D.N.J.
Nov. 18, 2015) ....................................................................................55

*In re Medrano,* 956 F.2d 101 (5th Cir. 1992).............................................37

*Int'l Asso. of Machinists & Aerospace Workers v. Tex. Steel Co.,* 639
F.2d 279 (5th Cir. 1981) .....................................................................56

*J-Hanna v. Tucson Dodge Inc.,* 2014 U.S. Dist. LEXIS 15866 (D. Ariz.
Feb. 7, 2014) ......................................................................................55

John Morrell & Co. v. Local Union 304A of United Food &
    Commercial Workers, 913 F.2d 544 (8th Cir. 1990) .........................................58

Karaha Bodas Co., L.L.C. v. Perusahaan Pertambangan Minyak Dan
    Gas Bumi Negara, 364 F.3d 274 (5th Cir. 2004) ........................................36, 62

Konkar Mar. Enters., S.A. v. Compagnie Belge D'Affretement, 668 F.
    Supp. 267 (S.D.N.Y. 1987) .................................................................55

Laws v. Morgan Stanley Dean Witter, 452 F.3d 398 (5th Cir. 2006) ....................55

Legion Ins. Co. v. Ins. Gen. Agency, Inc., 822 F.2d 541 (5th Cir.
    1987) .................................................................................................61

Lucent Techs., Inc. v. Tatung Co., 379 F.3d 24, 25 (2d Cir. 2004) .......................45

Matteson v. Ryder Sys., 99 F.3d 108 (3d Cir. 1996) ............................................57

Metcalf v. Yale Univ., 2017 U.S. Dist. LEXIS 211933 (D. Conn. Dec.
    27, 2017) ...........................................................................................49

Monster Energy Co. v. City Bevs. LLC, 141 S.Ct. 164, 207 L.Ed.2d
    1100 (2020) .......................................................................................45

Morgan Keegan & Co. v. Garrett, 495 F. App'x 443 (5th Cir. 2012) ..............36, 37

Offshore Marine Towing, Inc. v. MR23, 412 F.3d 1254 (11th Cir.
    2005) .................................................................................................59

OOGC Am., L.L.C. v. Chesapeake Expl., L.L.C., 975 F.3d 449 (5th
    Cir. 2020) ....................................................................................43, 44, 47

Pershing LLC v. Kiebach, 2017 U.S. Dist. LEXIS 77208 (E.D. La.
    May 22, 2017) ...................................................................................62

Piggly Wiggly Operators' Warehouse, Inc. v. Piggly Wiggly
    Operators' Warehouse Indep. Truck Drivers Union, 611 F.2d 580
    (5th Cir. 1980) ..................................................................................58

PoolRe Ins. Corp. v. Organizational Strategies, Inc., 783 F.3d 256
    (5th Cir. 2015) ..................................................................................60

*Positive Software Sols., Inc. v. New Century Mortg. Corp.*, 449 F.3d
    616 (5th Cir. 2006) ...............................................................4, 35, 43, 44, 46, 47

*Rain CII Carbon, LLC v. ConocoPhillips Co.*, 674 F.3d 469 (5th Cir.
    2012) ............................................................................................................34

*Roadway Package Sys. v. Kayser*, 257 F.3d 287 (3d Cir. 2001) ............................58

*Sanko S.S. Co. v. Cook Indus., Inc.*, 495 F.2d 1260, 1263-64 (2d Cir.
    1973) ............................................................................................................45

*Schmitz v. Zilveti*, 20 F.3d 1043 (9th Cir. 1994) ....................................................47

*Scott v. Monsanto Co.*, 868 F.2d 786 (5th Cir. 1989) ............................................62

*Stolt-Nielsen S. A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 130 S.Ct.
    1758, 176 L.Ed.2d 605 (2010) ....................................................................59

*Thomas Kinkade Co. v. White*, 711 F.3d 719 (6th Cir. 2013) ...............48, 49, 53, 54

*Trans Chem. v. China Nat'l Mach. Imp. & Exp. Corp.*, 161 F.3d 314
    (5th Cir. 1998) ......................................................................................36, 37

*Totem Marine Tug & Barge, Inc. v. N. Am. Towing, Inc.*, 607 F.2d
    649 (5th Cir. 1979) ..............................................................................55, 56, 57

*Totes Isotoner Corp. v. Int'l Chem. Workers Union Council/UFCW
    Local 664C*, 532 F.3d 405 (6th Cir. 2008) .........................................................58

*Uhl v. Komatsu Forklift Co.*, 512 F.3d 294 (6th Cir. 2008) ...................................63

*United Parcel Serv. v. Int'l Bhd. of Teamsters, Local Union No. 430*,
    55 F.3d 138 (3d Cir. 1995) ...........................................................................57

*United Steelworkers of Am. v. Enter. Wheel & Car Corp.*, 363 U.S. .................... 58

*Vantage Deep Water Co. v. Petrobras Am., Inc.*, 2019 U.S. Dist.
    LEXIS 83766 (S.D. Tex. May 17, 2019) ....................................................34, 61

*Wanken v. Wanken*, 451 F. App'x 319 (5th Cir. 2011) ............................................32

*Wyatt v. Kaplan*, 686 F.2d 276 (5th Cir. 1982) ....................................................62

**Statutes**

28 U.S.C. § 1291 ...................................................................................11

81(a)6)(B) ............................................................................................61

Fed. R. Civ. P. 26(b)(2)(C) ..................................................................63

9 U.S.C. § 9 .........................................................................................34

9 U.S.C. § 10 .......................................................................................15

9 U.S.C. § 10(a) .......................................................................32, 34, 40

9 U.S.C. § 10(a)(1) ...........................................12, 13, 36, 40, 46

9 U.S.C. § 10(a)(2) .........................................................12, 13, 43

9 U.S.C. § 10(a)(3) .........................................................12, 13, 54, 55

9 U.S.C. § 10(a)(4) .........................................................12, 13, 56, 57

9 U.S.C. § 10(c) ...................................................................................54

9 U.S.C. § 11 .......................................................................................34

**Court Rules**

5th Cir. R. 28.2.1 ..................................................................................2

5th. Cir. R. 28.2.3 .................................................................................4

Federal Rule of Appellate Procedure 34 ...............................................4

Federal Rule of Appellate Procedure 4(a)(1)(A) .................................11

## JURISDICTIONAL STATEMENT

This Court has jurisdiction over this appeal under 28 U.S.C. § 1291 because it is an appeal of a final decision of the U.S. District Court for the Southern District of Mississippi. The district court's Judgement confirming the Appellees' arbitration award was entered March 31, 2022.

This appeal is timely filed. The district court's judgement was signed March 31, 2022. On April 22, 2022, Appellant timely filed its Notice of Appeal. The Notice of Appeal was filed within thirty (30) days of the order disposing of judgment and was therefore timely under Fed. R. App. P. 4(a)(1)(A) and 4(a)(4)(A).

## STATEMENT OF THE ISSUES

1. Whether the Arbitration Award should be vacated under 9 U.S.C. § 10(a)(1) and remanded back to arbitration on the basis of fraud given the undisclosed bias of Arbitrator Charles R. Holton.

2. Whether the Arbitration Award should be vacated under 9 U.S.C. § 10(a)(2) and remanded back to arbitration on the basis of evident partiality given the undisclosed relationship between Arbitrator Holton and Appellees' Counsel, Paul Sun of the law firm Ellis & Winters, LLP.

3. Whether the Arbitration Award should be vacated under 9 U.S.C. § 10(a)(3) and remanded back to arbitration on the basis of arbitrator misconduct.

4. Whether the Arbitration Award should be vacated under 9 U.S.C. § 10(a)(4) and remanded back to arbitration on the basis of the award exceeding the arbitrator's powers.

5. Whether Affordable is entitled to discovery limited specifically to the bias, partiality, and conflicts related to Arbitrator Holton given that a reasonable person would conclude that Arbitrator Holton was partial to the Appellees.

## **INTRODUCTION**

The Supreme Court has long held that it "can perceive no way in which the effectiveness of the arbitration process will be hampered by the simple requirement that arbitrators disclose to the parties any dealings that might create an impression of possible bias. *Commonwealth Coatings Corp. v. Continental Casualty Co*., 393 U.S. 145, 148 (1968). In this matter, Arbitrator Charles R. Holton ("Arbitrator Holton" or the "Arbitrator") and counsel for Raeline K. McIntyre, DMD and Raeline K. McIntyre, MDM, P.C. (hereinafter, "Appellees") failed to disclose a substantial relationship between the Arbitrator and Appellees' counsel.

Based on this undisclosed, material conflict and the obvious bias of the Arbitrator, Appellant, Affordable Care, LLC ("Affordable" or "Plaintiff") seeks to have the Arbitration Award vacated as it was made in violation of the Federal Arbitration Act 9 U.S.C. § 10(a)(1-4) and the rules of the American Arbitration Association ("AAA"). Specifically, as discussed further, *infra*, the Arbitration Award must be vacated for the following reasons:

(1) The *complete* relationship between the Arbitrator and counsel for Appellees, not discoverable by due diligence prior to or during the arbitration given the limited initial disclosure provided by Arbitrator Holton, was *undisclosed* in such a manner *clearly* constituting prejudicial fraud;

(2) The significant, undisclosed, and compromising connection between Arbitrator Holton and Defense counsel, by which a reasonable person would have to conclude that that Arbitrator Holton was partial to Appellees, constituting evident partiality;

(3) The misconduct carried on by Arbitrator Holton in refusing to consider pertinent and material evidence, ultimately prejudicing the rights of Affordable; and,

(4) The fact that Arbitrator Holton greatly exceeded the power granted to him by the Parties through agreement by awarding fees that were never claimed nor submitted.

Just one day after Arbitrator Holton's decision was issued, Affordable learned the obvious reason for his one-sided view of the facts and law: the North Carolina counsel retained by the Appellees on the eve of the arbitration hearing had a close professional and legal relationship with the Arbitrator. Incredibly, Appellees' counsel was lead counsel for the same university that employs the Arbitrator as a professor. Moreover, Appellees' counsel was a co-faculty member with the Arbitrator, for the same university, for years and even during the hearing in this arbitration. Finally, Appellees' counsel is a benefactor of the pro bono clinic at the same university for which the Arbitrator was the director. Despite the: 1) attorney/client relationship; 2) the co-faculty positions shared with Appellees'

counsel; and, 3) the obvious conflict of interest concerning the pro bono clinic, the Arbitrator did not disclose the true extent of his relationship, dealings, and connections to Appellees' counsel. In addition, despite obviously being aware of these facts, the Arbitrator further misled Affordable with pre-hearing statements that his relationship with Appellees' counsel was merely casual and had occurred several years in the past.

As set forth below, the Arbitrator's Decision is fraudulent, fails to draw its essence from the contract at issue between the parties and is based on the Arbitrator's strong bias in favor of his counsel, co-faculty member, and clinic benefactor. Accordingly, based on uniform Fifth Circuit authority, the Arbitrator's decision should be vacated and this matter remanded to the American Arbitration Association for new trial before a replacement and neutral Arbitrator. 9 U.S.C. § 10.

Further, the information that Affordable obtained thus far concerning Arbitrator Holton's bias and conflicts derives solely from what is publicly available. Although the full extent of the connections between Arbitrator Holton and Attorney Paul Sun and the Winter's Firm, remains unknown, the known nexus between them is close enough to demonstrate a conflict of interest and bias on the part of Arbitrator Holton which affected the outcome of the Arbitration. The conflict between Arbitrator Holton and Appellees' counsel is so significant and compromising that it begs the question: if this is not a conflict of interest prejudicial to a party, then what

is?  To establish the full extent of the nexus and reveal any additional concealed relationships, limited discovery into the issue is necessary and appropriate.

In sum, the Supreme Court has held that the purpose of the FAA was not "to authorize litigants to submit their cases and controversies to arbitration boards that might reasonably be thought biased against one litigant and favorable to another." Commonwealth Coatings, 393 U.S.  at 149-150.  If the District Court's decision stands, Affordable and other parties will be forced to expend considerable resources to investigate ties between the arbitrator and the opposing side since the disclosures mandated by the AAA and federal law will be truly meaningless.

# I.  Statement of the Relevant Facts

### A.  The Arbitration Arose Out of a Services Contract Between a Dental Support Organization and a Dental Practice

The underlying arbitration concerned a Master Services Agreement to Provide Management Services to a Dental Practice dated November 1, 2002 ("the MSA") between Affordable and Appellees.

Affordable is a dental-support organization that provides, "non-clinical business services" to affiliated dentists.  ROA.312.  Every dentist affiliated with Affordable, including the Appellees, enters into a Master Services Agreement that sets forth the rights and obligations of the parties.  ROA.313.

From November 1, 2002 until February 24, 2020, the Practice was affiliated with Affordable.  ROA.283.  In the early 2000's, Dr. McIntyre and her husband, Dr.

Neil McIntyre, formed JNM Office Property, LLC ("JNM") to construct and own a new office building at 505 Cowan Road, Gulfport, Mississippi, which would then house the affiliated Practice. ROA.635. ROA.638. ROA.1200. On July 24, 2014, Affordable executed a lease with JNM for the Cowan Road Location (the "Prime Lease"). ROA.1200. Pursuant to the Prime Lease, JNM acted as landlord and Affordable acted as Tenant.

On September 18, 2019, the Practice sent a "Notice of Termination" to Affordable with a proposed disaffiliation date of November 4, 2019. ROA.1201-1202. Prior, Appellees never raised any material concerns or issues with Affordable. ROA.318. ROA.335. Initially, the Practice identified the "cause" for its Notice as an alleged violation of Section V(B)(9) of the MSA (ROA.1201-1202) because the Office Lease previously executed between Affordable and the Practice (the "Sublease")[1] terminated when the Practice – while still affiliated with Affordable – moved into the Cowan Road Location owned by the McIntyres' entity, JNM, in 2014. ROA.1201-1202. The Practice alleged that this voluntary move (which occurred with the McIntyres' participation) into their JNM building and resulting termination of the Sublease at the prior location resulted in a breach of the MSA. ROA.333. Dr. McIntyre admitted on the record that she never raised the Sublease

---

[1] The Sublease was a lease whereby Affordable subleased the office space and equipment set forth in the MSA to the Practice.

issue with Affordable prior to September 2019.  ROA.975.  In fact, Dr. McIntyre admitted that the lack of a sublease was not an issue until she was reading the MSA to try and find a basis for ending the relationship with Affordable.  ROA.975.  They later provided a second basis for termination alleging breaches which were later cured. (ROA.785-786).

Affordable responded to the Notice of Termination on September 27, 2019. (ROA.1205), taking the position that the ADDL Agreement and the MSA "remain in full force and effect. . . ."  ROA.1205.  Dr. McIntyre did not respond to Affordable's letter.  ROA.339.  Rather, the Practice continued to operate as normal until February 24, 2020.  ROA.339.

On November 1, 2019, Affordable filed an arbitration demand pursuant to Section VI(D) of the Parties' MSA seeking to confirm the validity and enforcement of the MSA. ROA.30.  On the same day, in response to attempts by the McIntyres to terminate its Prime Lease with JNM, Affordable instituted a declaratory judgment action in federal court. Therein, Affordable sought and successfully obtained, a judgment declaring that Affordable had not breached its Prime Lease, which kept Affordable in possession of the Cowan Road Location.  ROA.1209-1210. ROA.1386-1428.

### B.  Appellees Unlawfully Terminated the MSA

On January 17, 2020, a preliminary hearing was held in the Arbitration. The last day to amend the pleadings was February 17, 2020, and February 24, 2020 was designated as the witness disclosure date. ROA.1226. On February 17, 2020, Dr. McIntyre created a new practice entity, Raeline McIntyre, DMD, PLLC (the "Raeline PLLC"). ROA.972. On February 24, 2020, Appellees sent notice that they were "immediately" terminating the MSA. ROA.1206. Notably, the February 24, 2020 termination letter does not reference the September termination letters and relied on a new provision of the MSA as a basis for its termination. ROA.1206.

February 24, 2020 was also the date of the last deposit into the Practice's checking account made by Dr. McIntyre. ROA.629. All patient revenue after February 24, 2020 was directed to Raeline PLLC's new checking account. ROA.629-630. All Practice assets were transferred to Raeline PLLC without any written agreement or consideration. ROA.623. Dr. McIntyre made clear that these "intentional" actions were done in order to divert patients and revenue from the Practice to Raeline PLLC. ROA.973. Raeline PLLC continued to offer economy denture services and offered the same services to former Practice patients. ROA.632. ROA.642.

Despite Affordable holding a Prime Lease with her separate owner/landlord entity, JNM, Raeline PLLC continued to work in the Cowan Road Location and had no intention of leaving. ROA.634. Without any contractual right to remain in the

Cowan Road Location, Dr. McIntyre filed a state court action to enjoin Affordable from stopping her continued practice of dentistry. ROA.1215-1225. Affordable removed the state court injunction action to the United States District Court for the Southern District of Mississippi (the "District Court"). ROA.1230-1254. On March 17, 2020, the District Court ordered Dr. McIntyre to vacate the Cowan Road Location by March 27, 2020 and to not remove Affordable's equipment, supplies, furniture and other appurtenances therein. ROA.1209-1210.

In a similar fashion as before, Dr. McIntyre immediately created another entity, Neil McIntyre, DMD, PLLC ("Neil PLLC"). ROA.1259. ROA.644. All of the assets owned by Raeline PLLC were then transferred to Neil PLLC, again without an agreement or consideration. ROA.623. ROA.644. All patient files were transferred to Neil PLLC. ROA.645. Neil PLLC hired all of the Raeline PLLC employees, including former employees of Affordable's related entity Affordable Dentures Dental Laboratory, LLC ("ADDL"), and continued to practice in the economy denture segment. ROA.624. In fact, the prices and services offered by Neil PLLC are practically identical to those of the Practice. ROA.631. ROA.1260-1265. Neil PLLC's marketing materials inform patients: "New Location Same Great Doctors." ROA.1211-1214.

### C. Just Seven Weeks Before Arbitration, Appellees Retained Additional Counsel, and Sought a Continuance

Affordable was granted leave to amend its arbitration demand after Appellees repudiated the MSA. ROA.286 at ¶30. The Arbitrator issued a Report of Preliminary Hearing and Scheduling Order on March 5, 2020. ROA.286 at ¶30. ROA.1226-1229. The date for the arbitration hearing was originally scheduled for September 8-10, 2020 and it remained the same after the amendment. ROA.286 at ¶30. ROA.1226-1229.

On June 4, 2020, Appellees filed their Answer to Affordable's amended arbitration demand. ROA.286 at ¶31. ROA.1347-1381. ***The Answer did not include any counterclaims***. ROA.286 at ¶31. ROA.1347-1381. At the time of the Answer, Appellees were represented by the Balch & Bingham LLP law firm. ROA.286 at ¶31. ROA.1347-1381. All written discovery and depositions in the Arbitration were handled by the Balch & Bingham LLP firm. ROA.286 at ¶31.

Due to Covid-19, the arbitrator that the Parties had originally selected withdrew from the matter in June 2020. ROA.287 at ¶32. Through the AAA process Arbitrator Holton was selected. ROA.287 at ¶33. Per Rule 17(a) of the AAA Commercial Rules, Arbitrator Holton, the Parties, and counsel are required to fully disclose their relationships:

> Any person appointed or to be appointed as an arbitrator, as well as the parties and their representatives, shall disclose to the AAA any circumstance likely to give rise to justifiable doubt as to the arbitrator's impartiality or independence, including any bias or any financial or personal interest in the result of the arbitration or any past or present

relationship with the parties or their representatives. Such obligation shall remain in effect throughout the arbitration.

ROA.287 at ¶33. Arbitrator Holton completed the General Arbitrator Oath Form on June 19, 2020. ROA.287 at ¶34. ROA.158-160. At the time, Arbitrator Holton reported no conflicts with the parties or counsel involved in the arbitration. ROA.287 at ¶34.

On July 22, 2020, a new law firm, Ellis & Winters LLP (the "Winters Firm") entered an appearance on behalf of Appellees in the arbitration. ROA.287 at ¶35. This surprise enrollment came after Arbitrator Holton's appointment as arbitrator, more than 10 months into the arbitration proceeding, after the close of discovery, and just 7 weeks before the scheduled arbitration hearing. The Winters Firm did not disclose any conflicts or connections to Arbitrator Holton at all. ROA.287 at ¶35.

On July 23, 2020, Arbitrator Holton provided the following supplemental disclosure of his conflict:

> I would disclose that I know Mr. Sun and probably have had one or more cases with him or against him during my career, but nothing in the last 10 years. **I do not believe that I have seen or communicated with him in over 10 years. His involvement would not affect my judgment in the case**.

ROA.287 at ¶36 (emphasis added). ROA.211-212.

On August 7, 2020, Appellees notified Arbitrator Holton that Paul Sun ("Attorney Sun") of the Winters Firm had been in an accident on July 31, 2020 and was recovering from his injuries. ROA.287 at ¶37. As of the date of the accident,

Sun had been involved in the arbitration for eight (8) days and had billed only 7.7 hours. ROA.287 at ¶37.

On August 18, 2020, Appellees advised Arbitrator Holton that Attorney Sun was unable to participate in the September hearing and moved for a continuance. ROA.288 at ¶38. On August 25, 2020, despite Attorney Sun's limited involvement in the arbitration, Arbitrator Holton granted Appellees' motion to continue the long-scheduled arbitration hearing. ROA.288 at ¶38.

Ultimately, the hearing was held in December 2020. ROA.288 at ¶39. As Appellees had not asserted any counterclaims, Appellees did not present any exhibits or evidence relating to attorney fees incurred. ROA.288 at ¶39. The Arbitrator's Decision was issued on March 19, 2021, following two oral arguments held after the hearing. ROA.288 at ¶39. After the first oral argument, however, Arbitrator Holton spontaneously indicated to the Appellees that they could submit evidence of their attorney fees – despite no counterclaims having been asserted and no law providing Appellees with the right to attorneys' fees. ROA.288 at ¶39.

The second oral argument arose out of a March 2, 2021 ruling on the issue of waiver of contractual objections or rights made by Judge Sul Ozerden, United States District Court for the Southern District of Mississippi, on summary judgment motions pending in the JNM litigation involving the McIntyres' unsuccessful attempt to terminate the Prime Lease and evict Affordable. ROA.288 at ¶40. One

of the primary legal issues raised in the arbitration's post-hearing briefs was whether a right to terminate the MSA could be waived by the Appellees' ongoing and lengthy conduct continuing under the MSA. ROA.288 at ¶40. If the arbitrator had found (correctly) that the Appellees waived any objections to alleged breaches of the MSA when they failed to take action for years, then there was no cause for termination of the MSA and Affordable would have prevailed in the arbitration. Notably, in the JNM Litigation, Judge Ozerden's decision applied waiver of certain contractual rights and obligations, based on arguments made by the McIntyres on behalf of their owner/landlord entity JNM, regarding the Prime Lease between the parties. ROA.288 at ¶40. ROA.1386-1428. Affordable's judicial notice advised the Arbitrator:

> Highly relevant to this Arbitration, JNM argued that Affordable "waived any objection to the amount of rent paid during the first five-year period because it made at least 60 consecutive rent payments in this amount without any objection to that amount of rent." See Transcript, pg. 21. JNM and the Court cited Mississippi law that is consistent with North Carolina law on waiver. See Transcript, pgs. 21-22. The Judge reviewed the facts and held that Affordable waived its right to the overpayment based on the following finding of notice of the breach and no action: "[t]he undisputed evidence reflects that without objection Affordable Care had knowledge of its monthly rent payment and the construction costs, and voluntarily and willfully paid the rent amount for at least five consecutive years without objection." See Transcript, pg. 23. This waiver was found despite the fact that the Lease Agreement provides that any "changes" to the Lease Agreement "must be in writing signed by both parties." See Joint Exhibit 7, ¶18.

ROA.288 at ¶40. ROA.1387. Appellees responded to the supplemental authority prior to oral argument. ROA.289 at ¶41. ROA.1429-1432. Relevant to the instant appeal, Appellees conceded that Mississippi and North Carolina law were consistent on waiver:

> As the federal court explained, under Mississippi law, "[i]f after acquiring knowledge of the deviation from a known right articulated in the contract, a party fails to insist on its contractual rights or acts inconsistently with such rights, then that party waives the right to require such performance." Hr'g Tr. 22 (Cl.'s Notice Ex. 2). This principle is consistent with North Carolina case law regarding the non-breaching party's waiver of the right to complain about a breach of contract. See Resps.' Proposed Findings & Conclusions ¶¶ 213-15.

ROA.289 at ¶41. ROA.1430.

The only issue raised by Appellees at oral argument on the waiver issue was whether the parties were in privity. ROA.289 at ¶42. Affordable provided supplemental authorities to the Arbitrator that firmly supported the privity of parties in the two matters. ROA.289 at ¶43. ROA.1433-1539. Despite (1) the oral argument, (2) a decision on waiver by the federal court that was directly adverse to his legal findings, and (3) extensive briefing, the Arbitrator ignored this key legal issue entirely in the Decision he issued. ROA.289 at ¶42. ROA.43-157. If the principle of waiver had been applied consistent with North Carolina law, Mississippi law, and United States District Court Judge Ozerden's recent decision, Affordable would have wholly prevailed in the arbitration.

## D. *Arbitrator Holton's Decision Adopted Appellees' Brief, Virtually Wholesale*

The Arbitrator requested that the Parties submit proposed final decisions in advance of his ruling. ROA.289 at ¶44. A comparison of the Arbitrator's decision and Appellees' proposed final decision makes obvious that the Arbitrator did not conduct an independent review of the hearing transcript and law, as the Arbitrator adopted, nearly word-for-word, Appellees' proposed final decision. ROA.289 at ¶45. ROA.1892-2138. A list of the clear factual misstatements that the Arbitrator adopted unquestioningly from the Appellees' briefing are in the Record. ROA.2139-2144.

The Arbitrator granted judgment in favor of Appellees on all of Affordable's claims. ROA.289 at ¶46. In addition, despite the fact that the Appellees asserted no counterclaims, never presented evidence of attorney fees during the hearing, and that there was no basis under applicable North Carolina law for such award, Arbitrator Holton ordered Affordable to pay Appellees' attorney fees in the amount of $379,168 and costs in the amount of $14,430.75. ROA.289 at ¶46. Notably the majority of fees awarded by Arbitrator Holton were accrued in the short period of time since Paul Sun's enrollment in the matter.

As to the merits, Arbitrator Holton incredibly held that Appellees somehow terminated the MSA on September 18, 2019 despite the undisputed fact that Appellees complied with the MSA for another six months. ROA.103. As to the

grounds, Arbitrator Holton found that Appellees had cause to terminate the MSA pursuant to Sections V(B)(2) and V(B)(9). ROA.104-111. As to waiver, Arbitrator Holton found no evidence of waiver; wholly failing to cite or reference the federal court's summary judgment decision in the closely related JNM Litigation. ROA.111-116.

### E. Arbitrator Holton Rejected The District Court's Legal Holdings

Appellees and Affordable were also involved in federal court litigation while the arbitration was pending. ROA.1230-1254. One of the primary issues in the federal court litigation was whether Affordable waived its rights under a lease agreement. In the federal court matter, Appellees took the position that Affordable waived the clear language in the lease agreement based on the fact that Affordable had failed to act in a timely manner with regard to recovering overpaid rent. The federal court accepted this argument and entered summary judgment in favor of Appellees.

The federal court's decision was immediately presented to the Arbitrator. ROA.1386-1428. Appellees conceded that North Carolina and Mississippi law were consistent on waiver. However, in the arbitration, the Arbitrator refused to apply waiver to a lease provision despite the fact that Appellees never raised an alleged breach of the Services Contract for a 5 year period. In fact, the Arbitrator's decision

does not even mention the federal court's decision or the successful waiver position taken by Appellees in Mississippi.

### F. Arbitrator Holton and Attorney Paul Sun Failed to Disclose Their Close Connections

Arbitrator Holton is a full-time law professor for Duke University. ROA.290 at ¶48. Prior to joining Duke Law, Arbitrator Holton worked in private practice, where he represented Duke University in many lawsuits from 1983 through 2005. ROA.290 at ¶48. Arbitrator Holton's published lawsuits for Duke University confirm that he jointly represented, at times, both Duke University and professors of Duke University. ROA.290 at ¶48.

In addition to his professor duties, Arbitrator Holton is the Director of Duke Law School's Civil Justice Clinic. ROA.290 at ¶49. The Civil Justice Clinic is a partnership between Duke Law and the Legal Aid of North Carolina. ROA.290 at ¶49. ROA.2150-2153. Arbitrator Holton is the former chair of the board of directors for Legal Aid of North Carolina. ROA.290 at ¶49. The Winters Firm touts its involvement in Legal Aid of North Carolina as one of its seven, firm pro bono activities. ROA.290 at ¶50. ROA.2145-2146.

More importantly, Paul Sun and the Winters Firm took over representation of Duke University following Arbitrator Holton's long representation. ROA.290 at ¶51. Attorney Sun's experience section of his firm's website includes multiple cases representing Duke University. ROA.290 at ¶51. ROA.2147-2149. Finally, during

the course of the arbitration, Attorney Sun became a member of Duke Law's faculty. ROA.290 at ¶52. ROA.2154-2158. Specifically, Attorney Sun is a faculty member for Duke Law in its "Winter session 2021." ROA.291 at ¶53. Attorney Sun and the other faculty members taught classes during the weekends of Friday, February 19 – Sunday, February 21, and Friday, March 12 – Sunday, March 14. ROA.291 at ¶53. All of these faculty sessions took place during the briefing and oral arguments portion of the arbitration. ROA.291 at ¶53. Incredibly, registration for Winter session opened on December 11, 2020. ROA.291 at ¶54. Accordingly, Sun was awarded a faculty position prior to the Arbitration hearing. ROA.291 at ¶54. Indeed, the Fall 2013 Duke Law Magazine states that Attorney Sun regularly teaches a class during the Winter session. ROA.291 at ¶54. Despite the fact that Sun and the Arbitrator were both Duke Law faculty members during some or all of the arbitration, at no point did Attorney Sun, Appellees, the Winters Firm, or Arbitrator Holton disclose the strong connections between Attorney Sun, the Winters Firm and Arbitrator Holton. ROA.291 at ¶54.

### G. *Affordable Independently Learned of the Conflict After Arbitrator Holton Issued His Decision*

The Arbitration Award was issued on March 19, 2021, but not circulated to the Parties until March 22, 2021. ROA.291 at ¶55. Affordable learned of the contacts between the Arbitrator, Paul Sun, and the Winters Firm on March 20, 2021 through separate research into North Carolina law for another lawsuit. ROA.291 at

¶56. Upon learning of the conflict, Affordable asked the AAA whether it had a process to review the Arbitrator's conflict in this matter. ROA.291 at ¶57. The AAA verified that neither Arbitrator Holton nor the Winters Firm disclosed their connections during the Arbitration, but the AAA does not have a process to review conflicts after a final decision has been issued. ROA.291 at ¶57. Despite being asked by Affordable's counsel why the conflict was not disclosed, to date, Attorney Sun has not provided a reason for failing to disclose the conflict with Arbitrator Holton.

### H. Appellees Have Still Not Provided A Reason For the Non-Disclosure

In the District Court, Appellees sought to confirm the Award, opposed Affordable's motion to vacate, and even sought sanctions against Affordable. However, in none of these pleadings include any reasons for why Appellees failed to disclose the substantial relationship between Appellees' counsel and the Arbitrator.

## II. <u>Statement of the Case</u>

On November 1, 2019, Affordable filed its initial demand for arbitration against the Appellees.

On June 3, 2020, Affordable Care filed an Amended Demand for Arbitration.

The Arbitration hearing was held over the course of six (6) days in December, 2020. Closing arguments were made by the parties on February 11, 2021. On March

4, 2021, Affordable was granted leave by the arbitrator to present additional arguments on the summary judgment decision entered in the lawsuit pending between Affordable and JNM.

On March 19, 2021, the Arbitration Decision was rendered.

On March 22, 2021, the Arbitration Decision was circulated.

On March 24, 2021, Affordable filed its Complaint to Vacate the Arbitration Award in the United States District Court for the Southern District of Mississippi ("the District Court").

On June 17, 2021, Affordable filed its Motion to Vacate Arbitration Award and to Remand to the American Arbitration Association for a Hearing on Plaintiff's Damages.

Also on June 17, 2021, Affordable filed its Motion to Conduct Limited Discovery.

On June 17, 2021, Appellees filed their Application to Confirm Arbitration Award.

On March 31, 2022, the District Court issued its Judgment along with its Memorandum Opinion and Order. The District Court denied Plaintiff's Motion to Vacate and Denied Plaintiff's Motion for Discovery. The District Court Granted Defendants' Motion to Confirm Arbitration Award. The District Court dismissed the civil action with prejudice.

## III.   Statement of the Standard of Review

The United States Court of Appeals for the Fifth Circuit reviews the confirmation of an arbitration award de novo, using the same standards as did the district court. *Wanken v. Wanken*, 451 F. App'x 319, 320 (5th Cir. 2011).

Although a court's review of an arbitration award is considered deferential, there are several well-established grounds to vacate. See, e.g., *Citigroup Glob. Mkts., Inc. v. Bacon*, 562 F.3d 349, 352 (5th Cir. 2009). The court may vacate an award only (1) where the award was procured by corruption, fraud, or undue means; (2) where there was evident partiality or corruption in the arbitrators, or either of them; (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made. 9 U.S.C.S. § 10(a). The burden of proof is on the party seeking to vacate the award, and any doubts or uncertainties must be resolved in favor of upholding it. *Wanken v. Wanken*, 451 F. App'x 319, 320 (5th Cir. 2011). The United States Court of Appeals for the Fifth Circuit has no authority to review the merits of an arbitration award; its inquiry is limited to determining whether any of the statutory conditions for vacating it have been met. *Id.*

## IV.    Summary of Argument

The Arbitration Award should be vacated and Affordable should be granted limited discovery solely related to Arbitrator Holton's bias, partiality, and conflicts of interest.   The District Court erred in denying Affordable's Motion to Vacate and confirming the Arbitration Award.   There is clear evidence of fraud, partiality, misconduct, and overreaching of power by Arbitrator Holton thereby necessitating that the Arbitration Award be vacated.

Furthermore, the District Court erred in denying Affordable the opportunity to conduct limited discovery related solely to the bias, partiality, and conflict of Arbitrator Holton.

## V.    Argument

### A. The District Court Erred in Denying the Motion to Vacate

The District Court erred in denying Affordable's Motion to Vacate and confirming the Arbitration Award.   There is clear evidence of fraud, partiality, misconduct, and overreaching of power by Arbitrator Holton thereby necessitating that the Arbitration Award be vacated.

The Federal Arbitration Act ("FAA") provides various, "mechanisms for enforcing arbitration awards: a judicial decree confirming an award, an order vacating it, or an order modifying or correcting it." *21st Fin. Servs., LLC v. Manchester Fin. Bank*, 747 F.3d 331, 335 (5th Cir. 2014) (quoting *Hall Street*

*Assocs., LLC v. Mattel, Inc.,* 552 U.S. 576, 582, 128 S. Ct. 1396, 170 L. Ed. 2d 254 (2008)).

The Court does not review an arbitrator's decision on the merits nor does it set aside an award for mere mistake. *Vantage Deepwater Co. v. Petrobras Am. Inc.,* 4:18-cv-02246, 2019 WL 2161037, at *2 (S.D. Tex. May 17, 2019) (quoting *Householder Grp. v. Caughran*, 354 F. App'x 848, 851 (5th Cir. 2009)); *Cooper v. WestEnd Capital Mgmt., LLC,* 832 F.3d 534, 546 (5th Cir. 2016) (quoting *Rain CII Carbon, L.L.C.*, 674 F.3d at 471-72). However, the Court, "may modify and correct the award, so as to effect the intent thereof and promote justice between the parties." *Id*. Both 9 U.S.C. §§ 10 and 11 provide "the FAA's exclusive grounds for expedited vacatur and modification." *Hall Street*, 552 U.S. at 584. The FAA directs that a district court must grant an order confirming an arbitral award, "unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title." 9 U.S.C. § 9.

Per 9 U.S.C. § 10(a), the Court may vacate an award in the following circumstances:

(1)     the award was procured by corruption, fraud, or undue means;
(2)     there is evidence of partiality or corruption among the arbitrators;
(3)     the arbitrators were guilty of misconduct which prejudiced the rights of one of the parties; or,
(4)     the arbitrators exceeded their powers.

*21st Fin. Servs., LLC v. Manchester Fin. Bank*, 747 F.3d 331, 336 (5th Cir. 2014) (quoting *Harris v. Parker Coll. Of Chiropractic*, 286 F.3d 790, 792 (5th Cir. 2001)).

In the instant matter, all four circumstances are present warranting that the Arbitration Award be vacated.

The, "[i]nability to rely on the impartiality of the arbitrator frustrates the federal policy favoring arbitration and jeopardizes its continued use as an alternative method of dispute resolution." *Positive Software Sols., Inc. v. New Century Mortg. Corp.*, 337 F. Supp. 2d 862, 880 (N.D. Tex. 2004) (citing *Commonwealth Coatings Corp. v. Cont'l Cas. Co.*, 393 U.S. 145, 150, 89 S.Ct. 337, 340, 21 L.Ed.2d 301, 305 (1968)) (emphasis added). It is, "most important that the parties have complete confidence in the arbitrator's impartiality." *Positive Software Sols., Inc. v. New Century Mortg. Corp.*, 337 F. Supp. 2d 862, 880 (N.D. Tex. 2004). Per the United States Supreme Court, the, "rule of arbitration and this canon of judicial ethics rest on the premise that any tribunal permitted by law to try cases and controversies not only must be unbiased but also must avoid even the appearance of bias. We cannot believe that it was the purpose of Congress to authorize litigants to submit their cases and controversies to arbitration boards that might reasonably be thought biased against one litigant and favorable to another." *Commonwealth Coatings Corp. v. Cont'l Cas. Co.*, 393 U.S. 145, 150, 89 S.Ct. 337, 340, 21 L.Ed.2d 301, 305 (1968) (emphasis added).

## 1. The District Court Erred in Finding No Fraud

The Arbitration Award must be vacated in the instant matter because there is clear and convincing evidence of fraud on the part of Arbitrator Holton. Section 10(a)(1) provides that an arbitration award may be vacated on the basis of fraud if:

(1) the fraud occurred by clear and convincing evidence;

(2) the fraud was not discoverable by due diligence before or during the arbitration hearing; and,

(3) the fraud was materially related to an issue in the arbitration.

*Morgan Keegan & Co. v. Garrett*, 495 F. App'x 443, 447 (5th Cir. 2012) (quoting *Barahona v. Dillard's, Inc.,* 376 Fed. Appx. 395, 397 (5th Cir. 2010)); see also *Karaha Bodas Co., L.L.C. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 364 F.3d 274, 306 (5th Cir. 2004).

With regard to the third prong, "[i]t is not necessary to establish that the result of the arbitration would have been different if the fraud had not occurred." *Id*. (quoting *Karaha Bodas*, 364 F.3d at 306-07). However, § 10(a)(1) does require "a nexus between the alleged fraud and the basis for the panel's decision." *Id*. (quoting *Forsythe Int'l, S.A. v. Gibbs Oil Co. of Tex.,* 915 F.2d 1017, 1022 (5th Cir. 1990)). The Fifth Circuit has recognized that fraud requires a showing of bad faith during the arbitration proceedings. The undisclosed bias of an arbitrator is an enumerated action that will satisfy this requirement. *Morgan Keegan,* supra, at 447, citing *Trans*

*Chem. Ltd. v. China Nat'l Mach. Imp. & Exp. Corp.*, 978 F. Supp. 266, 304 (S.D. Tex. 1997), aff'd and adopted by, 161 F.3d 314 (5th Cir. 1998).

These provisions are an important safety net for parties in a private arbitration. *Hall St. Assocs. v. Mattel, Inc.,* 522 U.S. 576 (2008). They protect parties from the injustice that would result if arbitrary decisions that violate the arbitration agreement or fundamental fairness were allowed to stand. See *id.*

### i.   <u>Clear and Convincing Evidence of Fraud</u>

Affordable has met its burden of proof on all three prongs for fraud.  First, there is clear and convincing evidence of fraud.  While there is no definition as to what constitutes "clear and convincing evidence" specific to vacating arbitration awards, in general terms, the "clear and convincing" evidentiary standard is defined as:

> [T]hat weight of proof which produces in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established, evidence so clear, direct and weighty and convincing as to enable the fact finder to come to a clear conviction, without hesitancy, of the truth of the precise facts of the case.

*In re Medrano*, 956 F.2d 101, 101 (5th Cir. 1992).

In the instant matter, it is clear that there is an undisclosed bias constituting fraud.  First, Arbitrator Holton and Attorney Sun are co-workers of the same department: Arbitrator Holton is a full-time law professor for Duke University School of Law and during the course of litigation, Attorney Sun was appointed his winter clerk position becoming became a member of Duke University School of

Law's faculty. Duke University School of Law is not a large law school: per Duke University School of Law's website, the class of 2024 has a total of 282 students. Attorney Sun and Arbitrator Holton were co-faculty members of this law school during the hearing and Attorney Sun was presenting oral argument before his co-faculty member, Arbitrator Holton. Despite the two sharing the role of being faculty of the same law school, their relationship was never disclosed

Second, there is a clear conflict that was not disclosed with regard to the relationship and connection between Arbitrator Holton in his capacity as the Director of the Duke University School of Law's Civil Justice Clinic. Duke University is often represented by the Winters Firm, of which Attorney Sun is a partner. Specifically, Arbitrator Holton is the Clinic Director of the Duke University School of Law's Civil Justice Clinic, a partnership between Duke University School of Law and the Legal Aid of North Carolina. As the Clinic Director, Arbitrator Holton is listed as the main point of contact for the Clinic. The Clinic's administration is very small, listing only Arbitrator Holton and one other faculty member, as the faculty members serving on the Clinic. Both Arbitrator Holton's Duke biography and the Clinic's website state that Arbitrator Holton and the Clinic work with outside counsel through Legal Aid of North Carolina. Leaving no doubt as to Arbitrator Holton's intimate and hands-on involvement with the Clinic and its creation,

Arbitrator Holton's Duke biography touts that Arbitrator Holton is the former chairman of the board for the Legal Aid of North Carolina.

Appellees' counsel, the Winters Firm, touts its involvement with the organization, one of only seven of the firm's pro bono activities. Certainly the organization for which Arbitrator Holton himself is the director, benefits greatly from its relationship with Attorney Sun's firm and the representation that Attorney Sun's firm provides free of charge. Arbitrator Holton would have both a personal and professional interest in maintaining a positive relationship with one of the firms that provides pro bono assistance to the organization he himself is directing. It is undisputed that this relationship would create a conflict of interest and yet, the relationship was never disclosed.

Finally, the Winters Firm has represented Duke University in litigation as recent as June 2021, showing that the relationship was ongoing throughout the arbitration. See *Carlos Abreu Viltres v. Duke University*, Durham County, General Court of Justice, Superior Court Division, File No. 21 CVS 1869. The attorney-client relationship between the Winters Firm and Arbitrator Holton's employer, Duke University, alone presents a conflict in the form of an attorney-client relationship between the Winters Firm and Arbitrator Holton. The relationship between the Winters Firm, Attorney Sun, and Arbitrator Holton extends to significant areas affecting educational, legal, and business relationships. These

significant relationships were never disclosed. This is yet another example of clear and convincing evidence of an undisclosed bias constituting palpable fraud. Incredibly, Arbitrator Holton advertises on his Duke University biography that he authored "Practical Legal Ethics in North Carolina". Arbitrator's Holton's failure to disclose these serious conflicts certainly flies in the face of Arbitrator Holton's ethical obligations and has materially impacted Affordable's rights to the benefit of Arbitrator Holton and his personal interests and relationships.

ii. *The Fraud was Not Discoverable by Due Diligence Before or During the Arbitration Hearing*

While Affordable does not dispute that some information regarding the close relationship between Arbitrator Holton and Attorney Sun is public information and was discoverable prior to and during the arbitration hearing, it was not discoverable by due diligence. Affordable acted reasonably and prudently in relying upon the written disclosures made by Arbitrator Holton. Section 10(a)(1) does not state that the fraud must only be discoverable before or during the arbitration hearing. Rather, it qualifies that the fraud must have been discoverable by due diligence before or during the arbitration hearing. 9 U.S.C. § 10(a).

Based on the disclosures made by Arbitrator Holton, there was nothing that would indicate a need for further independent verification. Holton claimed that he had not spoken to Attorney Sun in over ten years. This certainly would not give rise to a need to conduct an independent investigation. However, neither Arbitrator

Holton nor Attorney Sun disclosed that they were concurrently serving as faculty at Duke; nor did either disclose that Attorney Sun's firm contributed to Arbitrator Holton's law clinic.

Notably, nowhere have Appellees cited any legal basis which would impose an independent duty on a litigant to investigate and verify the disclosures made by an arbitrator in purported compliance with their obligations under AAA rules. Indeed, such an obligation would entirely defeat the purpose having disclosures. Per Rule 17(a) of the AAA Commercial Rules, Arbitrator Holton, the Parties, and counsel are required to *fully* disclose their relationship. Even today we are left with no explanation for Arbitrator Holton and Attorney Sun's failure to disclose their relationship. Public policy and the AAA rules dictate the need for full disclosures. Due diligence would dictate accepting the sworn statements of the arbitrator as true and accurate in compliance with his obligations taken on when he accepted appointment by the AAA.

When Arbitrator Holton was first selected as the arbitrator in June 2020, there were no known conflicts with the parties or counsel involved in the arbitration. However less than one month following the selection of Arbitrator Holton, Appellees retained new counsel from the Winters Firm. This surprise enrollment came after Arbitrator Holton was appointed, more than ten months into the arbitration, and on the eve of the hearing – which was eventually moved at the

request of Attorney Sun. The Winters Firm did not disclose any conflicts or connections to Arbitrator Holton whatsoever. On July 23, 2020, Arbitrator Holton provided a supplemental disclosure of his conflict only stating to have, "probably have had one or more cases with [Attorney Sun] during [his] career, but nothing in the last 10 years[,]" and that he does not, "believe that [he has] seen or communicated with [Attorney Sun] in over 10 years." ROA.287 at ¶36. ROA.211-212.

Per Rule 17(a) of the AAA Commercial Rules, Arbitrator Holton and all counsel were required to fully disclose their relationships throughout the course of the arbitration:

> Any person appointed or to be appointed as an arbitrator, as well as the parties and their representatives, shall disclose to the AAA any circumstance likely to give rise to justifiable doubt as to the arbitrator's impartiality or independence, including any bias or any financial or personal interest in the result of the arbitration or any past or present relationship with the parties or their representatives. Such obligation shall remain in effect throughout the arbitration.

Accordingly, nothing about Arbitrator Holton's disclosure would give rise for an independent inquiry. Affordable was reasonable in relying not only on such disclosure under the belief that Arbitrator Holton had complied fully with his obligation to disclose "any circumstance likely to give rise to doubts" as to his bias or interest in the matter, but that Arbitrator Holton would supplement his disclosures as required under Rule 17(a). No case law would support a finding that a disclosure about having not communicated in over ten years would put parties on notice for the

need to independently verify and question such.  Due diligence would not, in any way under the law, involve further verification.

> *iii.* *The Fraud was Materially Related to an Issue in the Arbitration.*

Finally, the fraud, namely the undisclosed bias, is materially related to the arbitration.  In light of the fact that both Sun and Arbitrator Holton work for the same Law School as co-workers, have effectively an attorney/client relationship, and have a significant professional relationship, it certainly is in Arbitrator's Holton's best interest to maintain that relationship.  Thus, it is all the more incendiary here when Arbitrator Holton essentially adopted, word for word, Appellees' brief when rendering his decision.  A comparison of the Arbitrator's Decision and the Appellees' Proposed Final Decision is in the Record.  ROA.1892-2138.  The comparison shows, unequivocally that the Arbitrator's Decision essentially incorporated entirely Appellees' Proposed Final Decision across-the-board.

## 2.  The District Court Erred in Finding No Evident Partiality

Pursuant to §10(a)(2) an award may be vacated if there is evident partiality or corruption in an arbitrator.  The test for evident partiality in nondisclosure cases in the Fifth Circuit is set out in *Positive Software Solutions, Inc. v. New Century Mortgage Corp.*, 476 F.3d 278 (5th Cir. 2007) (en banc) and further discussed in *OOGC Am., L.L.C. v. Chesapeake Expl., L.L.C.*, 975 F.3d 449 (5th Cir. 9/14/2020).  In *Positive Software*, the Fifth Circuit stated that an arbitrator's award may be

vacated due to evident partiality if the conflict and its nondisclosure involve a, "reasonable impression of bias" stemming from, "a significant compromising connection to the parties" *OOGC Am. L.L.C.,* at 453, citing *Positive Software Solutions, Inc.* at 283. Notably, the *Positive Software* decision was not unanimous, with a strong six-person dissent inclined to use a bigger net.  In his dissenting opinion, Judge Weiner (concurring in Judge Reavley's dissent) noted that, due to the nature of arbitration, the standard for whether an arbitrator must make a disclosure is broader than the standard of what will disqualify him.

> I refer in general to the key differences between arbitration under the FAA and litigation in federal court; I refer in particular to one difference that is of prime significance in this case, viz., the disparate ways that the decision maker ---- an Article III judge on the one hand and an arbitrator on the other ---- is selected, and the unique role of the potential arbitrator's unredacted disclosure of his relationships with the parties and their counsel to ensure selection of an impartial arbitrator. **These general and particular differences underscore why such full and fair disclosure by a potential arbitrator of every conceivable relationship with a party or counsel, however slight, is a prerequisite. No relationship with a party or a lawyer is too minimal to warrant its disclosure, even if, in the end, it might be deemed to be too minimal to warrant disqualification**. Such an evaluation by the potential arbitrator, and any withholding of information based on it, are simply not calls that he is authorized to make. . .

*Id*., at 286 Emphasis added.

Further, the *Positive Software* decision purports to be founded in the Supreme Court's holding in *Commonwealth Coatings Corp. v. Continental Cas. Co*., 393 U.S. 145, 89 S. Ct. 337, 21 L. Ed. 2d 301 (1968).  The C*ommonwealth Coatings Corp*.

decision has been the subject of much discussion and the eventual split among the circuits regarding the bar a litigant must meet to succeed in a motion to vacate an arbitration award due to evident partiality. In *Monster Energy Co. v. City Beverages, LLC*, 940 F.3d 1130 (9th Cir., Oct. 22, 2019), *cert. denied*, *Monster Energy Co. v. City Bevs. LLC*, 207 L. Ed. 2d 1100, 2020 U.S. LEXIS 3430, 2020 WL 3492685 (U.S., June 29, 2020) the Ninth Circuit vacated an arbitration award and held that the standard for vacating an award due to "evident partiality" requires a two part showing: (1) that an arbitrator's undisclosed interest in an entity (such as JAMS or a law firm connected to the case) is substantial; and, (2) that entity's business dealings with a party to the arbitration are nontrivial. *Id*., at 1135. Notably, the Supreme Court denied certiorari on *Monster Energy* and the correct interpretation of *Commonwealth Coatings* remains unresolved among the circuits.

Many circuit courts have found that an arbitrator's failure to disclose a material relationship with one of the parties can constitute "evident partiality" requiring vacatur of the award. *Lucent Techs., Inc. v. Tatung Co.*, 379 F.3d 24, 25 (2d Cir. 2004); *Sanko S.S. Co. v. Cook Indus., Inc.*, 495 F.2d 1260, 1263-64 (2d Cir. 1973); *New Regency Prods., Inc. v. Nippon Herald Films, Inc.,* 501 F.3d 1101, 1105-06 (9th Cir. 2007); and *Middlesex Mut. Ins. Co. v. Levine*, 675 F.2d 1197, 1200 (11th Cir. 1982).

Nonetheless, and even applying the test articulated by the Fifth Circuit in *Positive Software Solutions, Inc.*, the law permits an arbitration award to be vacated if the party challenging the award can produce "specific facts from which a reasonable person would have to conclude that the arbitrator was partial to" its opponent. *Id.*, at 453, *citing Cooper v. WestEnd*, 832 F.3d at 545 (emphasis added). The facts of this case meet that standard. Arbitrator Holton's undisclosed connections to Attorney Sun prior to and during the arbitration were a "significant compromising connection." The failure to disclose the connections, on its own, is enough to warrant that the award be vacated pursuant to Section 10(a)(1) for fraud. Further, the resulting egregious and unsubstantiated award makes his evident partiality obvious.

i.    *Affordable Care did not Waive the Objection for Evident Partiality*

The District Court erroneously found that Affordable Care, "waived the objection [of evident partiality] because [Affordable Care] waited until after the arbitration award was issued to raise its claim of evident partiality." However, this, "rule only applies if the party had actual knowledge of the circumstances that form the basis of the objection." *Dealer Comput. Servs. v. Michael Motor Co.*, 485 F. App'x 724, 727 (5th Cir. 2012). In the instant matter, Affordable was not aware of the professional relationship between Attorney Sun and his firm, and Arbitrator Holton. Thus, Affordable could not reasonably, with the exercise of due diligence,

have discovered such given that Paul Sun failed to provide any disclosure and the limited disclosures made by Arbitrator Holton were incomplete and not enough to give rise to any suspicion.

ii.  _Relationship Between the Parties_

When challenging an arbitration award based upon nondisclosure of an arbitrator's relationship with the parties, it must be shown that the arbitrator had a "significant compromising connection to the parties." _Ameser. v. Nordstrom, Inc.,_ 442 F. App'x 967, 970 (5th Cir. 2011). In nondisclosure cases, an award may not be vacated because of a trivial or insubstantial prior relationship between the arbitrator and the parties to the proceeding. _Positive Software Sols., Inc.,_ 476 F. 3d at 283. The "reasonable impression of bias" standard is interpreted practically rather than with the utmost rigor. _Id._  Affordable sustained its burden in establishing, "specific facts from which a reasonable person would have to conclude that the arbitrator was partial to its opponent." _OOGC Am., L.L.C._, 975 F.3d at 453 (citations omitted) (emphasis in original).

Other courts have vacated arbitration awards in circumstances similar to the instant matter.  See _Schmitz_ 20 F.3d 1043 (9th Circuit April 4, 1994).  In _Schmitz_, one of the arbitrators, failed to include in his disclosure, the fact that his law firm had represented the parent company of a party to the arbitration.  While the district court affirmed the award, stating that because the arbitrator was unaware of the

conflict at the time of the hearing, there was no evident partiality, the appellate court reversed and vacated the award.

Likewise, in *Thomas Kinkade Co. v. White* (2013 WL 1296238), the Sixth Circuit affirmed a lower court's decision vacating an arbitration award when the chair of the arbitration worked for a firm which had accepted an engagement that came to the firm from the arbitrator appointed by the defendants, and another that was from the defendant himself. Notably, *Kinkade* was decided in accordance with the Sixth Circuit's standard for vacating an award on the basis of evident partiality, which is the same as the majority of circuits, including the Fifth Circuit.

The circumstances herein are even more evident of partiality. In this instance, Attorney Sun and his firm had *a long history of representing Duke University and its faculty members,* one of those members being Arbitrator Holton. As such, there was an attorney client relationship with Duke and its faculty, again, of which Arbitrator Holton is not only a long-time member but also serves as the Clinic Director of Duke Law School's Civil Justice Clinic. Per the North Carolina State Bar, "[a] lawyer employed or retained by an organization represents the organization acting through its duly authorized constituents." N.C. Rules Prof. Conduct 1.13. Duke University is an organization represented by Sun which also employs Arbitrator Holton. In fact, other courts have found that, "a 'party' includes an organization's employees with managerial responsibility; employees whose act or

omission in connection with the matter may be imputed to the organization; and employees, whose statements may constitute an admission of the organization." *Metcalf v. Yale Univ.*, No. 15-cv1696 (VAB) (D. Conn. Dec. 27, 2017).

Further, the relationship between Attorney Sun and Arbitrator Holton and their representation of and employment by Duke University preceded the Arbitration. Their relationship became even more significant, however, when, <u>during the course of the Arbitration</u>, Attorney Sun became a member of the faculty of Duke, and taught classes during the time the Arbitration was being briefed and oral arguments were being conducted. As mentioned above, the court in *Thomas Kinkade Co. v. White* (2013 WL 1296238), in vacating the arbitration award, held that by initiating business relationships with a party midway through the arbitration process, the Chair of the tribunal jeopardized the legitimacy of the process regardless of the disclosure given. *Id.* at *14. There can be no doubt that Arbitrator Holton knew of Attorney Sun and his tie to the university specifically. As one example, Affordable's investigation of this conflict identified the published news report of a case of local notoriety, in which Paul Sun is quoted as Duke's lawyer. ROA.2159-2165.

Finally, Arbitrator Holton, as the Director of Duke Law School's Civil Justice Clinic partnered with Legal Aid of North Carolina, which benefits greatly from the aid, support, and representation provided by the Winters Firm, where Paul Sun is a

partner. It goes without saying that maintaining a positive relationship with one of the Clinic's benefactors for which Arbitrator Holton is the Director and one of only two faculty members, would be in his best interest. This also evidences a business relationship between Arbitrator Holton and Sun.

Per the United States Supreme Court:

> where an arbitrator has a substantial interest in a firm which has done more than trivial business with a party, such fact must be disclosed, and that if arbitrators err on the side of disclosure, it will not be difficult for courts to identify those undisclosed relationships which are too insubstantial to warrant vacating an award.

*Commonwealth Coatings Corp. v. Cont'l Cas. Co*., 393 U.S. 145, 145, 89 S.Ct. 337, 337, 21 L.Ed.2d 301, 303 (1968). In the instant matter, the relationship between Attorney Sun, Attorney Sun's firm, and Arbitrator Holton is more than trivial business. Arbitrator Holton and Attorney Sun were co-workers and shared an attorney-client relationship by virtue of Attorney Sun's extensive and ongoing representation of Duke. Furthermore, they shared a relationship and it was in Arbitrator Holton's best interest to serve the interests of Attorney Sun for the sake of his position as the Director of the Civil Justice Clinic for which Attorney Sun's firm acts as benefactor. In compliance with the American Arbitration Association Code of Ethics for Arbitrators in Commercial Disputes, there was an obligation for Arbitrator Holton to disclose, "any facts which might affect [his] neutrality, independence, or impartiality." *See also Goswami v. DePaul Universit*y, 8 F. Supp.

3d 1004, *1015; 2014 U.S. Dist. LEXIS 37919, **28.  Arbitrator Holton, as a long-standing arbitrator and author of "Practical Legal Ethics in North Carolina", certainly knew of this obligation, but  failed to do so.  The relationship between Sun and Arbitrator Holton was known to Arbitrator Holton and was one that needed to be disclosed but was not.  Thus, the standard of evident partiality is met herein and the Arbitration Award should be vacated.

>    iii.    *Arbitrator Holton Displayed Evident Partiality and Bias Throughout the Arbitration*

Furthermore, these undisclosed connections make Arbitrator Holton's grant of procedural and substantive advantages to the Appellees all the more suspect.  Per the United States Supreme Court, "a party seeking to vacate an arbitration award for evident partiality need not show that the arbitrator "was actually guilty of fraud or bias in deciding th[e] case." *Commonwealth Coatings Corp. v. Continental Cas. Co.,* 393 U.S. 145, 89 S. Ct. 337, 21 L. Ed. 2d 301 (1968). The arbitration should be vacated under Section 10(a)(2) as Arbitrator Holton displayed evident partiality and bias throughout the arbitration and in rendering its decision.  The decision and award are so contrary to the evidence and the prior rulings of this Court, and include such a clear violation of the arbitrator's authority that the only reasonable conclusion is that the arbitrator was biased, and displayed "evident partiality" to Appellees due to the nature of his relationship with their counsel.

As described above, a different law firm represented Appellees throughout the complex history of the disputes among the parties and conducted all of the discovery and depositions in the Arbitration. Attorney Sun opportunely enrolled just a few weeks after Arbitrator Holton was selected as the new arbitrator and on the eve of the hearing. Soon after Sun's enrollment, the Arbitrator Holton began granting Appellees significant procedural and substantive advantages. First, Arbitrator Holton granted a continuance of the arbitration hearing based on the unavailability of his long-standing colleague, Attorney Sun. While Affordable acknowledges that this continuance was based upon an alleged injury that Attorney Sun sustained, other attorneys would have been available and just as familiar with the case given that Attorney Sun had, again only enrolled in this matter eight (8) days ago and had billed a total of only 7.7 hours to this long standing matter at that time.

Second, and far more egregious was, despite the fact that no counterclaim had been asserted by the Appellees and no evidence had been presented during the hearing, Arbitrator Holton *sua sponte* requested that Appellees submit evidence of attorney's fees. Arbitrator Holton subsequently granted Appellees an award of attorney fees in the amount of $379,168 and costs in the amount of $14,430.75 – an act which is so clearly outside the scope of his authority and inconsistent with North Carolina that it can only be the result of bias or partiality. Paradoxically, at the same time, the Appellees themselves argued in their Post-Hearing Brief in the Arbitration

that North Carolina law precluded the award of fees and costs under the MSA. ROA.1654-1776.

Finally, Appellees took a position with regard to waiver in federal court before Judge Ozerden that completely contradicted the position they took at arbitration. The District Court ruled in their favor, holding that Affordable Care had waived its rights under the MSA by failing to object and act in a timely manner with regard to recovering overcharged and overpaid rent. However, in the arbitration, Appellees took the opposite position concerning waiver, and arguing that they could terminate the MSA due to a problem back in 2016 with a supply order and due to termination of a sublease in 2014 when the practice moved to a building owned by the McIntyres' wholly owned entity, JNM. Despite being fully aware of the federal District Court's existing decision on the issue, Arbitrator Holton ruled in contradiction to such and in favor of Appellees. This bizarre move, again, can only be explained by evident bias.

As mentioned above, in *Thomas Kinkade Co. v. White* (2013 WL 1296238) where the Sixth Circuit affirmed a lower court's decision vacating an arbitration award, the Sixth Circuit notably held that the chair of the arbitration afforded the defendants *significant procedural and substantive advantages*. The tribunal ultimately awarded the Whites more than $1.4 Million, and denied a 'virtually uncontested' claim by Kinkade for the return of paintings for which the Whites had

not paid. The Sixth Circuit held that the only plausible explanation for the significant

favors provided to the Whites so late in the dispute was the chair's partiality.

*Thomas Kinkade Co. v. White*, 711 F.3d 719, 724, 2013 U.S. App. LEXIS 6537, *13,

2013 FED App. 0087P (6th Cir.), 8, 2013 WL 1296238. Likewise, in the instant

matter, the only plausible explanation for the significant favors provided to

Appellees by Arbitrator Holton is Arbitrator Holton's partiality.

### 3. The District Court Erred in Finding No Misconduct

Per Section 10 of the FAA, an arbitration award can be vacated when, as is

the case here, the arbitrators *were guilty of misconduct that prejudiced the rights of*

*one of the parties*. See 9 U.S.C. § 10(a) (3). "Misconduct" applies to more than just

fraud or deceit; it includes *unfair conduct regardless of motive or intent.* See *Gulf*

*Coast Indus. Workers Union v. Exxon Co., USA*, 70 F.3d 847, 850 (5th Cir. 1995)

(order vacating arbitration award affirmed by Fifth Circuit where arbitrators lulled

parties into believing that certain evidence had been admitted and then refusing to

consider it).

Courts may set aside arbitration awards when, "the arbitrators were guilty of

misconduct in […] refusing to hear evidence pertinent and material to the

controversy; or of any other misbehavior by which the rights of any party have been

prejudiced." 9 U.S.C. § 10(c). Particularly apt here, awards will be vacated where

parties are not provided the opportunity to, "present evidence without unreasonable

restriction" and "to confront and cross-examine witnesses." *ICAP Corporates, LLC v. Drennan*, 2015 WL 10319308, at *6 (D.N.J. Nov. 18, 2015) (citation omitted); see also *Konkar Mar. Enters., S.A. v. Compagnie Beige D'Affretement*, 668 F.Supp. 267, 271 (S.D.N.Y.1987) ("When a party establishes that the arbitrators have refused to consider relevant evidence, however, courts are more likely to vacate an award."). In the instant matter, Arbitrator Holton engaged in such misconduct when he refused to consider the evidence of the arguments and summary judgment on the issue of waiver.

Disobedience of a court order is "misconduct" as a matter of law under 9 U.S.C. § 10(a)(3). "Misconduct" under 9 U.S.C. § 10(a)(3) includes unfair conduct regardless of motive or intent. See *Gulf Coast Indus. Workers Union*, 70 F.3d at 850. The misconduct must, "so affect the rights of a party that it may be said that he was deprived of a fair hearing." *Laws v. Morgan Stanley Dean Witter*, 452 F.3d 398, 399 (5th Cir. 2006). An award that contradicts a prior court order is, "misconduct which prejudices a party" and is grounds to vacate an award under 9 U.S.C. § 10(a)(3). *J-Hanna v. Tucson Dodge Inc.,* No. CIV 10-504-TUC-CKJ, 2014 WL 504881, at *2-4 (D. Ariz. Feb. 7, 2014). Misconduct is prejudicial if it has a "direct bearing on [an] arbitrators' liability determinations" of a party. See *Totem Marine Tug & Barge, Inc. v. North American Towing, Inc.*, 607 F.2d 649, 651 (5th Cir. 1979).

Arbitrator Holton ignored key legal issues entirely in his Arbitration Decision. Specifically, Arbitrator Holton ignored the federal District Court's own ruling on the application of waiver and failed to adequately address such in his decision. If applied correctly, Affordable would have prevailed. This misconduct alone is grounds for vacating the Arbitration Award.

### 4. The District Court Erred in Finding that Arbitrator Holton Did Not Exceed His Powers

Alternatively, the Court should vacate the Arbitration Award because the award, particularly the award of attorney fees and costs, which were never claimed by Appellees, well exceeded the Arbitrator's power. An arbitration award may be vacated in federal court in instances in which the arbitrator exceeded his or her powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made. *See* 9 U.S.C. § 10 (a)(4).

An arbitrator exceeds his power when he issues an award on an issue that was not submitted to him or her. *Intl. Ass'n of Machinists & Aerospace Workers, Dist. 776 v. Texas Steel Co*., 639 F.2d 279, 283 (5th Cir. 1981) ("An arbitrator can bind parties only on issues that they have agreed to submit to arbitration, and whether an arbitrator has exceeded those bounds is an issue that courts properly may decide"). In *Totem Marine Tug & Barge, Inc. v. North American Towing, Inc*., 607 F.2d 649, 651 (5th Cir. 1979), the Fifth Circuit vacated an arbitration award because the

arbitration panel exceeded its powers by awarding damages arising from an issue that, "was never placed in issue in the arbitration proceeding[,]" holding that an award on that basis denied defendant its due process. *Totem Marine*, 607 F.2d at 651. The Fifth Circuit found that by "ignor[ing] the arbitral dispute submitted by the parties and dispens[ing] their 'own brand of industrial justice,'" the arbitrators exceeded their powers within the meaning of 9 U.S.C. § 10(a)(4) and noted that, "[a]lthough arbitrators enjoy a broad grant of authority to fashion remedies, arbitrators are restricted to those issues submitted." 607 F.2d at 651-52. *See also Container Products, Inc. v. United Steelworkers of Am.,* and its Loc. 5651, 873 F.2d 818 (5th Cir. 1989), (the Court affirmed vacatur of an arbitration award that modified an employer's disciplinary action taken against an employee because the agreement to arbitrate did not authorize the arbitrator to modify disciplinary action finding that the arbitrator "clearly exceeded his authority."). Again, in *Matteson v. Ryder Systems, Inc.,* 99 F.3d 108, 115 (3d Cir. 1996) the Third Circuit reversed a district court and held the arbitrator exceeded its authority by deciding issues that had not been submitted by the parties. Importantly, the court held that "an arbitrator has the authority to decide only the issues actually submitted." *Id*. at 112-13 (citing *United Parcel Serv., Inc. v. Int'l Brotherhood of Teamsters, Chauffeurs, Warehousemen & Helpers of Am.*, *Local Union No. 430*, 55 F.3d 138, 142 (3d Cir. 1995) ("An arbitration award will, of course, be enforceable only to the extent it does not exceed

the scope of the parties' submission."); *United Steelworkers of Am. v. Enter. Wheel and Car Corp.*, 363 U.S. 593, 598 (1960) (upholding arbitration award but suggesting that were the award beyond the submission it would have been vacated). *John Morrell & Co. v. Local Union 304A of United Food & Commercial Workers, AFL-CIO*, 913 F.2d 544, 560-61 (8th Cir. 1990) (finding that an arbitrator acted outside his authority when the parties neither referred to the issue he decided in their opening briefs nor offered evidence on the issue); *Totes Isotoner Corp. v. Int'l Chem. Workers Union Council/UFCW Local* 664C, 532 F.3d 405, 415 (6th Cir. 2008) (holding that "[w]hen an arbitrator reaches a question not committed to him by the parties, he acts outside of his authority such that an order vacating such an award is appropriate."). *See also* P*iggly Wiggly Operator's Warehouse, Inc. v. Piggly Wiggly Operators' Warehouse Indep. Truck Drivers Union*, Local No. 1, 611 F.2d 580, 583 (5th Cir. 1980) (arbitrator "can bind the parties only on issues that they have agreed to submit to him"); *Roadway Package Sys., Inc. v. Kayser*, 257 F.3d 287, 301-02 (3d Cir. 2001) (vacating arbitration award where arbitrator "ruled on an issue that was not properly before him"), abrogated on different grounds, *Hall Street Assocs., LLC v. Mattel, Inc.*, 552 U.S. 576 (2008); *Fahnestock & Co., Inc. v. Waltman*, 935 F.2d 512, 515 (2d Cir. 1991) ("[I]f arbitrators rule on issues not presented to [them] by the parties, [they have] exceeded [their] authority and the award must be vacated.").

This has been applied in instances in which an arbitrator awarded attorney's fees where there was no such claim submitted to him or her. *Offshore Marine Towing, Inc.* v. *MR23*, 412 F.3d 1254, 1256-58 (11th Cir. 2005) (modifying arbitration award where arbitrator ruled on attorneys' fees claim not submitted to him). Arbitral actions contrary to express contractual provisions are not entitled to judicial confirmation. *Delta Queen S.B. Co. v. District 2 Marine Engineers & Beneficial Assn., etc.,* 889 F.2d 599, 604, 1989 U.S. App. LEXIS 18414, *15, 133 L.R.R.M. 2077, 113 Lab. Cas. (CCH) P11,692, 1993 AMC 1213.

In *Exxon Mobil Corp. v. Paper, Allied-Indus. Chem. & Energy Workers Int'l Union,* Local 4-12, 383 F. Supp. 2d 877, 877 (M.D. La. 2005), the court held an arbitrator exceeded its authority in making a ruling on an "implied issue" the arbitrator ruled on based on the arbitrator's study of the record. The court held it improper for arbitrators to rule on such implied issues that are not explicitly presented by the parties. *Id*. at 877. The Supreme Court has made clear that arbitrators may not "stray[] from interpretation and application of the agreement and effectively dispense[] [their] own brand of industrial justice." *Stolt-Nielsen S.A. v. Animal Feeds Int'l Corp*., 559 U.S. 662, 671 (2010). When an arbitration panel acts in excess of its authority, its "decision may be vacated under § 10(a)(4) of the FAA on the ground that the arbitrator 'exceeded [its] powers,' for the task of an arbitrator is to interpret and enforce a contract, not to make public policy." *Id*. at 671-72.

An arbitrator also exceeds his power when he takes action that is contrary to an express contractual provision. *PoolRe Ins. Corp. v. Organizational Strategies, Inc.,* 783 F.3d 256, 265 (5th Cir. 2015). In *PoolRe*, the Court vacated an entire arbitration award because the arbitrator applied AAA arbitration rules, but the contract between the parties required the arbitrator to apply the International Chamber of Commerce's arbitration rules. The Court found that the arbitrator exceeded his authority in applying rules that were not those that the contract expressly specified.

These authorities demonstrate that an arbitrator exceeds their power when they issue an award on an issue that was not within their contractually established authority, and when their award is contrary to the terms of the contract between the parties. The above cited jurisprudence is on all fours with the facts of the case at bar. This matter was submitted to arbitration pursuant to the Parties' agreement to arbitrator disputes set forth in the MSA. On June 4, 2020, Appellees filed their Answer to Affordable's amended arbitration demand. *This answer did not include any counterclaims let alone counterclaims for fees.* At the arbitration hearing, the Appellees did not present any exhibits or evidence relating to attorney fees. This is because they had not asserted any counterclaims in their Answer. However, following the first oral argument, Arbitrator Holton spontaneously, without prompting, indicated to the Appellees that they could submit evidence of their

attorney fees.  In awarding attorney fees and costs that were not a part of a counterclaim at Arbitration, were not presented with any evidence or exhibits, and were contrary to governing North Carolina law, the Arbitrator Holton exceeded his authority.  As such, Arbitrator Holton's Decision and Award must be vacated.

### 5.  The District Court Erred in Denying the Motion for Discovery

Discovery in vacatur and confirmation proceedings is authorized by Rule 81(a)(6)(B) and is proper when, as here, the movant requests information that is relevant and necessary to a showing of an arbitrator's conflict or bias, and raises issues that implicate factual questions that cannot be reliably resolved without some further disclosure.  *Vantage Deepwater Co. v. Petrobras Am., Inc*., 966 F.3d 361, 372 (5th Cir. 2020).  Affordable, as the party seeking discovery, bears the burden of showing the necessity of the discovery it seeks. *Id*.  Per this Court, challenges to arbitration awards, "may require evidentiary hearings outside the scope of the pleadings and arbitration record," recognizing that "[s]uch matters as misconduct or bias of the arbitrators cannot be gauged on the face of the arbitral record alone." *Legion Ins. Co. v. Ins. Gen. Agency, Inc*., 822 F.2d 541, 542-43 (5th Cir. 1987).  Simply put, "[t]he [discovery] inquiry is an entirely practical one, and is necessarily keyed to the specific issues raised by the party challenging the award and the degree to which those issues implicated factual questions that cannot be reliably resolved

without some further disclosure." *Karaha Bodas Co., L.L.C. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara,* 364 F.3d 274, 305 (5th Cir. 2004).

This Court thus permits discovery if the requesting party makes an initial showing of the need for the additional facts to support vacatur. Discovery is permissible when the discovery is "reasonable," "the requesting party provides more than 'vague assertions that additional discovery will produce needed, but unspecified facts,'" and "the court determines that more information is needed before the court can resolve the disputed issues." *Pershing LLC v. Kiebach*, No. 14-2549, 2017 WL 604033, at *3 (E.D. La. Feb. 15, 2017) (citing *Karaha Bodas*, 364 F.3d at 304-05).

Affordable is not seeking a second bite at the proverbial apple. Affordable's reasonable discovery request is for discovery which neither replicates the substance of the Arbitration nor attacks the merits of the Award.  Rather, the record presents glaring red flags and proof of impartiality and misconduct that indicate a flawed arbitration process, which denied Affordable fundamental fairness and fully supports Affordable's request for limited discovery to develop relevant, yet undisclosed facts.

The Court possesses "broad discretion in discovery matters." *Estate of Boles v. Nat'l Heritage Realty, Inc.*, 2010 U.S. Dist. LEXIS 51604, *20 (N.D. Miss. May 20, 2010) (citing *Bisby v. Garza*, 342 Fed. Appx. 969, 973 (5th Cir. 2009) (citing *Scott v. Monsanto Co.*, 868 F.2d 786, 793 (5th Cir. 1989)); see also *Wyatt v. Kaplan*, 686 F.2d 276, 283 (5th Cir. 1982)). The "rules of discovery are to be accorded a

broad and liberal treatment." *EEOC v. HWCC-Tunica, Inc.*, 2008 U.S. Dist. LEXIS 85830, *5 (N.D. Miss. Oct. 6, 2008) (citing *Hickman v. Taylor*, 329 U.S. 495, 507, 67 S. Ct. 385, 91 L. Ed. 451 (1947)).

The Federal Rules of Civil Procedure enable parties to obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering (1) the importance of the issues at stake in the action, (2) the amount in controversy, (3) the parties' relative access to relevant information, (4) the parties' resources, (5) the importance of the discovery in resolving the issues, and (6) whether the burden or expense of the proposed discovery outweighs its likely benefit. See Fed. R. Civ. P. 26(b)(2)(C).

Affordable has certainly provided evidence that a reasonable person would have to conclude that Arbitrator Holton was partial to the Appellees and as such, discovery post-arbitration award is certainly warranted. *Uhl v. Komatsu Forklift Co.,* 512 F.3d 294, 308 (6th Cir. 2008). It is undeniable that Arbitrator Holton had contacts and connections with Paul Sun and his partnership, the Winters Firm, that were not disclosed to Affordable as required. It is further undeniable that those contacts were of the type and degree that would warrant disqualification of an arbitrator due to conflicts of interest if properly and timely disclosed as a reasonable person would have to conclude partiality on the part of Arbitrator Holton. Moreover, it is undeniable that the Award rendered by Arbitrator Holton was outlandishly off

base from the facts presented. Arbitrator Holton's decision was extensively copied, verbatim, from the final decision proposed by Appellees, and improperly awarded Appellees fees that were not even claimed and that were inconsistent with North Carolina law. ROA.289. Finally, to date, Attorney Sun has not provided an explanation for why he failed to disclose the conflict with Arbitrator Holton. Instead, Appellees have doubled-down on their improper conduct, going so far as to suggest that any challenge to their failure to disclose the significant conflict between Arbitrator Holton and Attorney Sun is "insulting" and must be "blatantly" "factually incorrect" because Arbitrator Holton and Attorney Sun are "highly regarded":

> "[i]n a feeble and misguided effort to demonstrate grounds under the law Affordable asserts that Mr. Charles Holton, a highly regarded Duke University Law Professor, failed to disclose his relationship with McIntyre's local counsel[2], Mr. Paul Sun, another highly regarded attorney, and fellow of the American College of Trial Lawyers, from Raleigh, North Caroline. Not only is this insulting, it is factually incorrect and blatantly so."

ROA.4438-4439.

Appellees cannot shield the wrongdoing of Arbitrator Holton and Attorney Sun by attempting to distract the Court by their apparent accolades, which are irrelevant and simply a disingenuous attempt to dodge the very serious question:

---

[2] Incredibly, Appellees attempt to downplay Attorney Sun's involvement in the arbitration by describing the Winter's Firm as "local counsel" when, in fact, it is quite obvious that Attorney Sun and his partner, Kelly Dagger, were lead counsel and billed – *by far* – the most in legal fees.

why was the conflict not disclosed? Attorney Sun's explanation for why he failed to disclose the conflict is highly relevant to this matter and discovery should be had on this issue or, at the very least, Attorney Sun should be required to respond to this simple inquiry. As such, Affordable should be permitted to conduct limited discovery into the contacts and bias of Arbitrator Holton.

## CONCLUSION

For the forgoing reasons, the rulings and judgments of the district court should be reversed in its entirety.

LEWIS BRISBOIS BISGAARD & SMITH, LLP


*/s/ Nancy A. Cundiff*
MEREDITH A. MAYBERRY (MB #101796)
NANCY A. CUNDIFF (LSBA #27974)
DAVID A. CAMPBELL (OH B #0066494)
CAROLINE J. SANCHES (LSBA #32975)
LEWIS BRISBOIS BISGAARD & SMITH LLP
400 Poydras Street, Suite 1300
New Orleans, Louisiana 70130
Telephone: 504-302-4100
Facsimile: 504-754-7569
Email: meredith.mayberry@lewisbrisbois.com
nancy.cundiff@lewisbrisbois.com
david.campbell@lewisbrisbois.com
caroline.sanches@lewisbrisbois.com
and

STEPHEN B. SIMPSON
PURVIS & CO. PLLC
14110 Airport Rd, Suite A
Gulfport, MS 39503
Telephone:  (228) 206-7174
Facsimile:   (601) 510-7794
Email: ssimpson@purviscolaw.com

**_Attorneys for Affordable Care, LLC_**

## CERTIFICATE OF SERVICE

In compliance with Federal Rule of Appellate Procedure 25(d)(3) and Fifth

Circuit Rule 25.2.5, I hereby certify that on July 5, 2022, I electronically filed the

BRIEF OF APPELLANTS

with the Clerk of the United States Court of Appeals for the Fifth Circuit by using

the appellate CM/ECF system.


DATED:     July 5, 2022                    */s/ Nancy A. Cundiff*
                                           NANCY A. CUNDIFF

## <u>CERTIFICATE OF COMPLIANCE WITH THE TYPE-VOLUME LIMIT</u>

In compliance with Federal Rule of Appellate Procedure 32(g) and Fifth Circuit Rules 32.2 and 32.3, I certify that the foregoing brief of Plaintiff-Appellant complies with the type-volume limitations of Federal Rule of Appellate Procedure 32(a)(7)(B).

1.     This document complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(2)(b) because, excluding the parts of the document exempted by Federal Rule of Appellate Procedure 32(f) this brief contains ***exactly*** 12,873 words.

2.     This document complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because: this brief has been prepared in a proportionally spaced typeface using Microsoft Word 365 in Times New Roman, 14 point font.

DATED:     July 5, 2022             */s/ Nancy A. Cundiff*
                                     NANCY A. CUNDIFF

## CERTIFICATE OF ELECTRONIC COMPLIANCE

I certify that (1) the required privacy redactions have been made, 5th. Cir. R. 25.2.13; (2) the electronic submission is an exact copy of the paper document, 5th Cir. R. 25.2.1; and (3) the document has been scanned for viruses with the most recent version of a commercial virus scanning program and is free of viruses. I will mail the correct number of paper copies of the foregoing document to the Clerk of the Court when requested.


DATED:     July 5, 2022          */s/ Nancy A. Cundiff*
_____
                                 NANCY A. CUNDIFF