No. 22-60245

In the United States Court of Appeals
for the Fifth Circuit

AFFORDABLE CARE, L.L.C.

Plaintiff-Appellant

V.

RAELINE K. MCINTYRE, DMD; RAELINE K. MCINTYRE, DMD, P.C.,

Defendants-Appellees

On Appeal from the United States District Court for the
Southern District of Mississippi
(Case No. 1:21-cv-85-TBM-RPM)
The Hon. Judge Taylor McNeel, Presiding

_____

APPELLANT, AFFORDABLE CARE, L.L.C.'S REPLY BRIEF

_____

NANCY A. CUNDIFF (LSBA #27974)
DAVID A. CAMPBELL (OH B #0066494)
CAROLINE J. SANCHES (LSBA #32975)
LEWIS BRISBOIS BISGAARD & SMITH LLP
400 Poydras Street, Suite 1300
New Orleans, Louisiana 70130
Telephone: 504-302-4100
Facsimile: 504-754-7569
Email:    nancy.cundiff@lewisbrisbois.com
          david.campbell@lewisbrisbois.com
          caroline.sanches@lewisbrisbois.com

STEPHEN B. SIMPSON
PURVIS @ CO. PLLC
14110 Airport Road, Suite A
Gulfport, Mississippi 39503
Telephone: 228-206-7174
Facsimile: 601-510-7794
Email:  ssimpson@purviscolaw.com

*Attorneys for Affordable Care, LLC*

# TABLE OF CONTENTS

**STATEMENT OF THE ISSUES PRESENTED FOR REVIEW** ....................... 2

**SUMMARY OF THE ARGUMENT** ..................................................... 3

**ARGUMENT** ......................................................................................... 8

    **I.**    **Sun Failed to Make *Any* Conflict Disclosure and Did Not Join the District Court Proceeding, Avoiding Discovery About His Conflict.** ........... 10

    **II.**    **Fraud Through Arbitrator Bias** ................................................. 14

        *1.*    *The Arbitrator Did Not Accurately Disclose His Relationship With Sun or the Winters Firm* ............................................................................ 14

        *2.*    *Affordable Has Not Misstated the Evidence of The Connections Between Sun, the Winters Firm and the Arbitrator* ....................................... 16

        *a.*    *Sun and the Arbitrator Were Co-Workers at the Time of Arbitration* . 16

        *b.*    *Sun and the Arbitrator had an Attorney-Client Relationship* ............... 17

    **B.**    **The Fraud was Not Discoverable By Due Diligence During or Before the Arbitration** .................................................................................... 18

    **C.**    **The Fraud Was Materially Related to the Arbitration** ......................... 21

    **III.**    **Evident Partiality Demands that the Arbitration Award be Vacated** .. 21

        *A.*    *Evident Partiality Was Never Waived* .................................................. 22

        *B.*    *There is a Reasonable Impression of Bias Drawn from the Significant Compromising Relationship Between the Arbitrator and Sun and the Winters Firm* .......................................................................................... 23

        *C.*    *The Arbitrator Displayed Evident Partiality Throughout the Arbitration and in his Ruling* ............................................................... 24

    **IV.**    **Misconduct By the Arbitrator Demands that the Arbitration Award be Vacated** ........................................................................................... 26

**V.   The Arbitrator Exceeded his Powers thereby Demanding that the Arbitration Award be Vacated** ............................................................27

**CONCLUSION** ...................................................................................27

**CERTIFICATE OF SERVICE** ........................................................**29**

**CERTIFICATE OF COMPLIANCE WITH THE TYPE-VOLUME LIMIT 30**

**CERTIFICATE OF ELECTRONIC COMPLIANCE** ......................................**31**

# <u>TABLE OF AUTHORITIES</u>

## <u>Cases</u>

*Barahona v. Dillard's Inc*., 376 F. App'x 395, 398 (5th Cir. 2010) .......................12

*Dealer Comput. Servs. v. Michael Motor Co.,* 485 F. App'x 724, 728 n.4 (5th Cir. 2012)................................................................................. 12, 13, 14, 15

*Goswami v. DePaul Universit*y, 8 F. Supp. 3d 1004, *1015; 2014 U.S. Dist. LEXIS 37919, **28 ................................................................................16

*ICAP Corporates, LLC v. Drennan*, 2015 WL 10319308, at *6 (D.N.J. Nov. 18, 2015)................................................................................18

*Kiernan v. Piper Jaffray Cos., Inc*., 137 F.3d 588, 593 (8th Cir. 1998).................12

*Konkar Mar. Enters., S.A. v. Compagnie Beige D'Affretement*, 668 F.Supp. 267, 271 (S.D.N.Y.1987)................................................................................18

*Lucent Techs., Inc. v. Tatung Co.,* 379 F.3d 24, 28 (2d Cir. 2004) .......................12

*Midland Telecasting Co. v. Midessa Television Co.*, 617 F.2d 1141, 1141, n.5 (5th Cir. 1980)................................................................................13

*OOGC Am., L.L.C.*, 975 F.3d at 453................................................................15

*Schmitz v. Zilveti, 20 F.3d 1043 (9th Cir. 1994)* ................................................16

*Uhl v. Komatsu Forklift Co.,* 466 F. Supp. 2d 899, 908 (E.D. Mich. 2006) ..........12

*Vantage Deepwater Co. v. Petrobras Am., Inc*., 966 F.3d 361, 372 (5th Cir. 2020).R. CIV. P. 81(a)(6)(B))................................................................5

## **Statutes**

9 U.S.C. § 10(a) ................................................................................13

9 U.S.C. § 10(a)(1)................................................................................4

9 U.S.C. § 10(a)(2)................................................................................4

9 U.S.C. § 10(a)(3)................................................................................5

9 U.S.C. § 10(a)(4)................................................................................5

## <u>STATEMENT OF THE ISSUES PRESENTED FOR REVIEW</u>

1. Whether the Arbitration Award should be vacated under 9 U.S.C. § 10(a)(1) and remanded back to arbitration on the basis of fraud given the undisclosed bias of Arbitrator Charles R. Holton.

2. Whether the Arbitration Award should be vacated under 9 U.S.C. § 10(a)(2) and remanded back to arbitration on the basis of evident partiality given the undisclosed relationship between Arbitrator Charles R. Holton and Defendants' Counsel, Attorney Paul Sun.

3. Whether the Arbitration Award should be vacated under 9 U.S.C. § 10(a)(3) and remanded back to arbitration on the basis of arbitrator misconduct.

4. Whether the Arbitration Award should be vacated under 9 U.S.C. § 10(a)(4) and remanded back to arbitration on the basis of the award exceeding Arbitrator Charles R. Holton's powers.

5. Whether Affordable is entitled to discovery limited specifically to the bias, partiality, and conflicts related to Arbitrator Charles R. Holton given that a reasonable person would have to conclude that Arbitrator Charles R. Holton was partial to the Defendants.

## SUMMARY OF THE ARGUMENT

The Supreme Court has long held that the arbitration process, "functions best when an amicable and trusting atmosphere is preserved and there is voluntary compliance with the decree, without the need for judicial enforcement." *Commonwealth Coatings Corp. v. Continental Casualty Co*., 393 U.S. 145, 151 (1968) (White, J., concurring). Relevant to this appeal, the Supreme Court encouraged the arbitrator and parties to disclose all potential conflicts "at the outset" of the arbitration proceeding in order to avoid judicial intervention in the arbitration process. *Id.* The *Commonwealth Coatings* Court reasoned that early and complete disclosures permit the parties "to reject the arbitrator or accept him with knowledge of the relationship and continuing faith in his objectivity. . . ." *Id.*

In this matter, ten (10) pages of the Brief of Defendants-Appellees Raeline K. McIntyre, DMD and Raeline K. McIntyre, DMD, PC ("Appellees") attempt to minimize the many contacts and relationships between Arbitrator Charles R. Holton ("the Arbitrator") and Appellees' law firm, Ellis & Winters LLP (the "Winters Firm"), and the Winters Firm's partner handling the arbitration, Paul Sun ("Sun"). Appellees' Brief argues that the Winters Firm is not technically the Arbitrator's lawyers, that the Winters Firm were one of many significant donors to the Arbitrator's legal program, and that Sun's co-faculty relationship with the Arbitrator during the arbitration was somehow not a conflict. (Appellees' Brief at 23-32). The

one fact, however, that Appellees cannot dispute is that none of these many contacts and relationships between the Arbitrator, the Winters Firm, and Sun were disclosed during the arbitration.

The District Court's decision should be reversed because the many contacts and relationships that the Arbitrator, the Winters Firm, and Sun failed to disclose do not represent a "trivial or insubstantial prior relationship between the arbitrator and the parties to the proceeding." *Positive Software Solutions, Inc. v. New Century Mortg. Corp.*, 476 F.3d 278, 283 (5th Cir. 2007). To the contrary, eleven pages of brief were required to discuss the contacts and relationships between the Arbitrator, the Winters Firm, and Sun because those contacts and relationships were repeated, significant, and ongoing. *Id.* (*citing Commonwealth Coatings*, 393 U.S. at 146). Moreover, the limited disclosure made by the Arbitrator was wholly incomplete, yet the Winters Firm and Sun failed to correct or disclose the repeated, significant, and ongoing contacts and relationships between the parties. (Appellees' Brief at 4). Accordingly, the rulings and judgments of the district court should be reversed in their entirety.

## RELEVANT FACTS

## I.  The Arbitrator, the Winters Firm, and Sun Had A Duty To Provide A Complete Disclosure In The Arbitration.

The arbitration at issue in this matter proceeded under the Commercial Rules of the American Arbitration Association (the "AAA Rules"). (cite to Services

Contract). Relevant to this appeal, Rule 17 of the AAA Rules required Sun, the Winters Firm, and the Arbitrator to make full and complete disclosures of potential conflicts:

> R-17. Disclosure
> (a) Any person appointed or to be appointed as an arbitrator, ***as well as the parties and their representatives***, shall disclose to the AAA ***any circumstance likely to give rise to justifiable doubt as to the arbitrator's impartiality or independence, including any bias or any financial or personal interest in the result of the arbitration or any past or present relationship with the parties or their representatives***. Such obligation ***shall remain in effect throughout the arbitration***. Failure on the part of a party or a representative to comply with the requirements of this rule may result in the waiver of the right to object to an arbitrator in accordance with Rule R-41.

(AAA Rules at R-17) (emphasis added).

In addition, as a practicing lawyer and arbitrator in North Carolina, the Arbitrator was required to make a "a reasonable inquiry" into "any known facts that a reasonable person would consider likely to affect the impartiality of the arbitrator in the arbitration proceeding." NC Gen Stat § 1-569.12(a) (2019). North Carolina law required the Arbitrator to disclose "[a]n existing or past relationship with any of the parties to the agreement to arbitrate or to the arbitration proceeding, their counsel or representatives, a witness, or other arbitrators." NC Gen Stat § 1-569.12(a)(2) (2019).

**II.    The Arbitrator, the Winters Firm, and Sun Failed To Disclose Their Repeated, Significant, And Ongoing Relationship.**

The only disclosure in this arbitration was made by the Arbitrator the day after the Winters Firm and Sun joined the arbitration:

> I would disclose that I know Mr. Sun and probably have had one or more cases with him or against him during my career, but nothing in the last 10 years.  I do not believe that I have seen or communicated with in over 10 years. His involvement would not affect any judgment in the case.

(ROA 211).

The Winters Firm did not disclose any conflicts or connections to the Arbitrator.  ROA.287 at ¶35.   In addition, Sun and the Winters Firm did not correct or respond to the Arbitrator's disclosure.  Finally, the Arbitrator, Sun, and the Winters Firm never supplemented or corrected their disclosures during the course of the arbitration.

The timing of the arbitration proceeding – conceded in Appellees' Brief – highlights the lack of candor on behalf of the Arbitrator, Sun, and the Winters Firm. (Appellees' Brief at 6-7).   The arbitration hearing was held in December 2020. ROA.288 at ¶39.  Two oral arguments were held in 2022, the second taking place in March.  ROA.28 at ¶¶39-40).  Incredibly, Sun had been a faculty member at Duke Law School – with the Arbitrator – since 2013.  ROA.288 at ¶54).  In fact, Sun was acting as a co-faculty member with the Arbitrator for a session that opened on

December 11, 2020 and continued through the conclusion of oral argument. ROA.288 at ¶54. However, Sun, the Winters Firm, and the Arbitrator failed to disclose this co-faculty relationship that was ongoing during the arbitration hearing and oral arguments.

The Arbitration Award was circulated to the Parties on March 22, 2021. ROA.291 at ¶55. Affordable learned of the true contacts and relationships between the Arbitrator, Sun, and the Winters Firm on March 20, 2021 through separate research into North Carolina law for another lawsuit. ROA.291 at ¶56. Upon learning of the conflict, Affordable asked the AAA whether it had a process to review the Arbitrator's conflict in this matter. ROA.291 at ¶57. The AAA verified that neither the Arbitrator nor the Winters Firm disclosed their contacts and relationships during the Arbitration, but the AAA does not have a process to review conflicts after a final decision has been issued. ROA.291 at ¶57. Despite being asked by Affordable's counsel why the conflict was not disclosed, to date, Sun has not provided a reason for failing to disclose the conflict with the Arbitrator.

Appellees' Brief does not explain why the Winters Firm and Sun did not fully disclose their repeated, significant and ongoing relationships with the Arbitrator. (Appellees' Brief at 4-5). In fact, the Winters Firm was not representing Appellees in the District Court proceedings when the District Court Judge could have directly asked Sun and the Winters Firm about the scope of their repeated, significant and

ongoing relationships with the Arbitrator and the reasons why a respected law firm would not fully disclose these repeated, significant and ongoing relationships.

The Winters Firm is now lead counsel in this appeal. (Appellees' Brief at 1). Appellees' Brief argues that their contacts and relationships with the Arbitrator are trivial or insubstantial. However, Appellees' Brief does not allege that the Arbitrator's disclosure complied with the AAA Rules or North Carolina law. (Appellees' Brief at 4-5). More importantly, the Winters Firm has still not explained why it did not fully disclose the contacts and relationships with the Arbitrator that are now at issue in this appeal. (Appellees' Brief at 4-5).

## **ARGUMENT**

### I. **The Contacts And Relationships Between The Arbitrator, Sun, And the Winters Firm Are Repeated, Significant, And Ongoing.**

This Court has interpreted the Supreme Court's decision in *Commonwealth Coatings Corp. v. Continental Casualty Co*., 393 U.S. 145 (1968) as not requiring a district court to vacate an arbitration decision when an arbitrator's failed to disclose facts that are merely "trivial" or "insubstantial." *Positive Software*, 476 F.3d at 284. However, this Court has held that the failure to disclose contacts and relationships that are repeated and significant does support a District Court stepping in to vacate an arbitration award. *Id.* (*citing Commonwealth Coatings*, 393 U.S. at 146 (business relationship between arbitrator and party was "repeated and significant"; the party to the arbitration was one of the arbitrator's "regular customers"; "the relationship

even went so far as to include the rendering of services on the very projects involved in this lawsuit"); *see also Olson v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 51 F.3d 157, 159 (8th Cir. 1995) (arbitrator was a high-ranking officer in a company that had a substantial ongoing business relationship with one of the parties); *Schmitz v. Zilveti*, 20 F.3d 1043, 1044 (9th Cir. 1994) (arbitrator's law firm represented parent company of a party for decades, including within two years of the arbitration); *Morelite Constr. Corp. v. New York City Dist. Council Carpenters Ben. Funds*, 748 F.2d 79, 81 (2nd Cir. 1984) (arbitrator's father was General President of the union involved in the arbitrated dispute)).

In this case, Appellees' Brief takes ten (10) pages of argument for Appellees' to attempt to minimize the repeated, significant, and ongoing contacts and relationships between the Arbitrator, the Winters Firm, and Sun. (Appellees' Brief at 23-32). The undisputed facts – not yet supplemented through discovery – are as follows:

- The Arbitrator practiced law privately before becoming a Duke Law Professor and his practice involved representing Duke University. ROA.288 at ¶¶48;
- The Winters Firm and Sun took over the Duke University legal work from the Arbitrator. ROA.288 at ¶51;
- The Arbitrator is not only a professor, but also the Director of Duke Law School's Civil Justice Clinic. ROA.288 at ¶49. The Civil Justice Clinic is a partnership between Duke Law and the Legal Aid of North Carolina. ROA.288 at ¶49. The Arbitrator is the former chair of the board of directors for Legal Aid of North Carolina. ROA.288 at ¶49.

- The Winters Firm touts its involvement in the Legal Aid of North Carolina as one of its seven, firm pro bono activities. ROA.288 at ¶50;
- Sun is a faculty member for Duke Law's "Wintersession 2021." Sun and the other faculty members taught classes during the weekends of Friday, ROA.288 at ¶59. February 19 – Sunday, February 21, and Friday, March 12 – Sunday, March 14. ROA.288 at ¶59. All of these faculty sessions took place during the briefing and oral arguments portion of the arbitration. ROA.288 at ¶59.
- Finally, registration for Wintersession opened on December 11, 2020. ROA.288 at ¶54. Accordingly, Sun was awarded a faculty position prior to the Arbitration hearing. ROA.288 at ¶54. In fact, the Fall 2013 Duke Law Magazine states that Sun regularly teaches a class during the Wintersession. ROA.288 at ¶54.

If these repeated, significant, and ongoing contacts and relationships between the Arbitrator, Sun, and the Winters Firm are not sufficient to vacate an arbitration award in this Circuit, one struggles to find a case short of criminal activity that would support vacatur. The arbitration hearing was being held yet the Arbitrator and Sun held secret their co-faculty relationship. Moreover, if not sufficient to vacate the award on their face, the District Court erred by not permitting discovery to force the Arbitrator, Sun, and the Winters Firm to fully disclose their contacts and relationships and explain why experienced lawyers did not believe that these contacts and relationships warranted disclosure to Affordable. *Vantage Deepwater Co. v. Petrobras Am., Inc*., 966 F.3d 361, 372 (5th Cir. 2020).

## II. Sun And the Winters Firm Failed to Make *Any* Conflict Disclosure and Did Not Join the District Court Proceeding, Avoiding Discovery About His Conflict.

Appellees' Brief concentrates on the Arbitrator's supplemental disclosure, which was insufficient and fraudulent as detailed more thoroughly *infra*, but Appellees fail to mention that Sun and the Winters Firm failed to make *any* conflict disclosure at all.

Sun entered a notice of appearance in the arbitral proceedings on July 22, 2020, over eight months after the start of the proceedings and just seven weeks before the scheduled arbitration hearing. The next day, the Arbitrator provided his supplemental disclosure, which omitted important conflicts of interest. For example, the disclosure omitted that the Arbitrator and Sun are co-faculty members at Duke Law and have been for many years. The disclosure omitted that the Arbitrator is the director of Duke Law School's Civil Justice Clinic and former chair of the board of directors for Legal Aid of North Carolina, which are directly connected to the Winters Firm. The disclosure also omitted that the Winters Firm has represented Duke University, the Arbitrator's employer, in many recent cases, including during the course of the arbitration. While the Arbitrator's supplemental disclosure fatally omitted key conflicts, Sun failed to make any disclosure at all, in violation of the rules of the American Arbitration Association ("AAA").

The AAA requires full disclosure by both arbitrators, as well as the parties and their representatives. Per Rule 17(a) of the AAA Commercial Rules, "Any person appointed or to be appointed as an arbitrator, **as well as the parties and their**

**representatives**, **shall** disclose to the AAA any circumstance likely to give rise to justifiable doubt as to the arbitrator's impartiality or independence, including any bias or any financial or personal interest in the result of the arbitration or any past or present relationship with the parties or their representatives. . . ." (emphasis added). Sun incredibly did not see fit to disclose any of the conflicts with the Arbitrator either when he saw the Arbitrator's incomplete and misleading disclosure or when he accepted a co-faculty relationship with the Arbitrator during the arbitration hearing, post-hearing briefs and oral arguments. Can one fully believe that a co-faculty member held his colleague to the same standard as others?

Further, Sun and the Winters Firm failed to join the district court proceeding where the Motion to Vacate and Motion to Confirm the Final Arbitration Award were filed. The intentional failure of Sun and the Winters Firm to participate as counsel in the district court proceeding is an interesting anomaly because they were lead counsel during the arbitration hearing and are lead counsel in this appeal. It is unclear why Sun and the Winters Firm decided not to enroll in the district court proceeding. However, if the district court had permitted discovery and a contradictory hearing on the motions, as it should have, their non-enrollment would have protected them from being questioned by the Court and by opposing counsel through discovery regarding their conflicts. Moreover, at a case management conference, the district court judge could have directly asked Sun, "tell me whether

you requested a conflict waiver from Duke University prior to accepting representation of Appellees."

Appellant was not allowed to delve further into the conflicts of interest that were not disclosed to them because the district court did not grant Appellant's Motion to Conduct Discovery, despite Appellant demonstrating the great need for the information and that the requested information is solely in Appellees' possession.

Discovery in vacatur proceedings is proper when, as here, the movant requests information that is relevant and necessary to a showing of an arbitrator's conflict or bias and raises issues that implicate factual questions that cannot be reliably resolved without some further disclosure. *Vantage Deepwater Co. v. Petrobras Am., Inc.*, 966 F.3d 361, 372 (5th Cir. 2020).R. CIV. P. 81(a)(6)(B)). The following factual questions remain unresolved and cannot be resolved without Sun and the Winters Firm making a fully disclosure:

- Did the Winters Firm seek a conflict waiver from Duke University prior to accepting the representation of Appellees in the arbitration?
- Have the Winters Firm and Sun ever represented Duke University in a case in which the Arbitrator was involved as a faculty member of Duke such that that there could be an attorney-client relationship?
- Have the Winters Firm or Sun ever communicated with the Arbitrator regarding their representation of Duke such that there could be an attorney-client relationship?
- Has the Arbitrator, in his role as director of Duke Law School's Civil Justice Clinic and chair of the board of directors for Legal Aid of North Carolina, ever contacted the Winters Firm or Sun to solicit support for either organization?

- In the last ten years, have the Winters Firm or Sun ever worked on a case with Duke Law School's Civil Justice Clinic or Legal Aid of North Carolina such that they could be considered benefactors of the organizations?
- As co-faculty members of Duke, have Sun and the Arbitrator interacted personally and/or socially?
- As co-faculty members of Duke during the course of the Arbitration, did Sun and the Arbitrator have any ex parte communications or interactions?; and
- Why didn't Sun, the Winters Firm, or the Arbitrator believe that their contacts and relationships should be disclosed.

All the of the information requested above is key to Appellant's arguments related to the Arbitrator's undisclosed conflicts of interest and partiality. Further it is information solely within the possession of Appellees and would not have taken any resources for Appellees to respond to, yet Appellant was not permitted to even ask the questions. Moreover, it appears that Sun and the Winters Firm might have attempted to avoid having to answer the questions by failing to enroll as counsel in the district court. Sun's and the Winters Firm's evasive tactics after failing to disclose any conflicts of interest during the arbitration cannot stand. The matter must be remanded so that Affordable can conduct limited discovery into the undisclosed conflicts of interest between the Arbitrator, Sun, and the Winters Firm.

## III. Fraud Through Arbitrator Bias

### A. Clear and Convincing Evidence of Fraud

#### 1. *The Arbitrator Did Not Accurately Disclose His Relationship With Sun or the Winters Firm*

It is clear that there existed an undisclosed relationship between the Arbitrator and Sun. In fact, throughout their Opposition, Appellees, specifically, Sun himself, admit to the facts of the relationship between himself and the Arbitrator that was not previously disclosed. This clearly, unambiguously, and undoubtedly reflects an undisclosed relationship. It is this undisclosed relationship which proves that there was fraud inherent in the arbitration and the Arbitrator's decision.

Appellees' argument that the Arbitrator accurately disclosed his relationship with McIntyre's counsel, Sun, is patently false. The only disclosure made by the Arbitrator as to Sun and the Winters Firm, made on July 23, 2020, provided:

> I would disclose that I know Mr. Sun and probably have had one or more cases with him or against him during my career, but nothing in the last 10 years. I do not believe that I have seen or communicated with him in over 10 years. His involvement would not affect my judgment in the case.

(Dec. Twilla at Ex. 28, ¶36).

As is evident, the Arbitrator's disclosure does not mention that the Winters Firm would provide aid to the organization for which the Arbitrator was the director of. Nor does the Arbitrator's disclosure mention that the Winters Firm and Sun himself had taken over representation of Duke University following the Arbitrator . Finally, the Arbitrator's disclosure never mentions that during the arbitration itself, Sun joined the faculty at Duke Law for which the Arbitrator is a member, making them co-workers. The relationship between the Arbitrator and Sun went *well beyond*

what was disclosed by the Arbitrator. Sun made no disclosures whatsoever. Had the Arbitrator or Sun disclosed any part of their actual relationship, then perhaps Affordable would have been put on some notice to inquire further. This however, was not the case. Instead, Sun said nothing and the Arbitrator withheld material information concerning his conflicts with Sun, that no *reasonable* party would think there was any need or duty to investigate further.

### 2. *Affordable Has Not Misstated the Evidence of The Connections Between Sun, the Winters Firm and the Arbitrator*

#### a. <u>Sun and the Arbitrator Were Co-Workers at the Time of Arbitration</u>

Despite the unfounded declarations of Appellees, Sun and the Arbitrator are in fact, "co-workers." Both Sun and the Arbitrator, *during the time of the arbitration*, were employed by Duke Law School. This, by any definition, makes them co-workers. It is particularly egregious that they were co-workers *during* the actual arbitration. And yet this fact was never disclosed to put Affordable on notice of potential bias or a duty to investigate such. Had their co-worker relationship been disclosed, then Affordable would have had an opportunity to investigate. The law does not provide for parties to blindly assume that the Arbitrator is misrepresenting relationships when making disclosures. Nor does the law import a duty upon a party to conduct a fishing expedition to confirm the veracity of an arbitrator's disclosure. The duty is on the Arbitrator to make a complete and truthful disclosure so that the

16

parties can be put on notice of a need to inspect further and, most important, whether to agree to continue with that arbitrator.  Affordable was deprived of this right.

### b. <u>*Sun and the Arbitrator had an Attorney-Client Relationship*</u>

Affordable has been *wrongfully* denied an opportunity to conduct *reasonable discovery* and as such, Affordable has been left with no option other than to gather what information it can find that is readily available to the public – i.e., a news article.  Appellees' repetitive argument of there being no offered evidence of an attorney client relationship is wholly without merit given that Affordable has been given no opportunity to conduct discovery to discover the extent of this relationship.  Based on what information Affordable has thus far, as described in its principal brief, it is clear that an attorney-client relationship existed.

### c. <u>*The Winters Firm, For Which Sun is a Partner, is a Benefactor of the Pro Bono Clinic Directed by the Arbitrator*</u>

The Arbitrator is listed as the Director of the Duke Law School's Civil Justice Clinic (Dec. Twilla at ¶49).  The Civil Justice Clinic is a partnership between Duke Law and the Legal Aid of North Carolina.  (Dec. Twilla at Ex. 40, ¶49).  The Arbitrator was, at the time of arbitration, the former chair of the board of directors for Legal Aid of North Carolina.  (Dec. Twilla at ¶49).   The Winters Firm is a self-proclaimed benefactor of the Arbitrator's clinic.  The Arbitrator, as the Director of Duke Law School's Civil Justice Clinic partnered with Legal Aid of North Carolina benefits greatly from the aid, support, and representation provided by the Winters

Firm (for which Sun is a partner). It goes without saying that maintaining a positive relationship with one of the Clinic's benefactors for which the Arbitrator is the Director of, would be in his best interest. This is evidence demonstrating a business relationship between the Arbitrator and Sun.

## B. The Fraud was Not Discoverable By Due Diligence During or Before the Arbitration

The fraud *was not discoverable by due diligence* as Affordable acted reasonably and prudently in relying upon the disclosures made by the Arbitrator. Section 10(a)(1) does not state that the fraud must be discoverable only before or during the arbitration hearing. Rather, it qualifies that *the fraud must have been discoverable by due diligence* before or during the arbitration hearing. 9 U.S.C. § 10(a). The fact is that this fraud was not discoverable by the exercise of due diligence.

Based on the disclosures made by the Arbitrator and the lack of disclosure made by Sun, due diligence would not require a need for further independent verification. The Arbitrator claims that he had not spoken to Sun in over ten (10) years. This certainly would not give rise to a need to conduct an independent investigation. If there is some independent duty to investigate and verify the disclosures of an arbitrator regardless of what is disclosed, then that would entirely defeat the purpose at all of having disclosures. Due diligence would dictate taking the sworn statements of the arbitrator as true.

In that instant matter, when the Arbitrator was first selected as the arbitrator in June 2020, there were no known conflicts with the parties or counsel involved in the arbitration. However less than one (1) month following the selection of the Arbitrator, Defendants retained new counsel from the Winters Firm. This surprise enrollment came *after the Arbitrator has been appointed and more than ten (10) months into the arbitration. The Winters Firm did not disclose any conflicts or connections to the Arbitrator whatsoever.* Nothing about the Arbitrator's disclosure would give rise for an independent inquiry. No case law would support a finding that a disclosure about having not communicated in over ten (10) years would put parties on notice for the need to independently verify and question such. Due diligence would not, in any way under the law, involve further verification.

Appellees cite to *Uhl v. Komatsu Forklift Co.,* a case stemming from the Eastern District of Michigan. This case is distinguishable however because in *Uhl,* the defendants had actual knowledge of some of the prior professional contacts between the plaintiff's attorney and the arbitrator. *Uhl v. Komatsu Forklift Co.,* 466 F. Supp. 2d 899, 908 (E.D. Mich. 2006). In the instant matter however, Affordable was not provided with a truthful disclosure that would make it aware of the prior and *ongoing* professional relationship between the Arbitrator and Sun.

Appellees also misapply *Barahona v. Dillard's Inc.,* in its Opposition. In *Barahona,* the fraudulent conduct was, "discovered during the arbitration hearing

and brought to the attention of the arbitrator, who addressed it by drawing an adverse inference against Dillard's." *Barahona v. Dillard's Inc*., 376 F. App'x 395, 398 (5th Cir. 2010). This is not the case here. In the instant matter, the fraud was neither discovered nor could reasonably be discovered during the arbitration.

Again, the Appellees' use of *Dealer Computer Services, Inc. v. Michael Motor Co*, is misplaced. The full note in *Dealer Computer Services, Inc*., reads:

> Federal case law holds that arbitrating parties have a reasonable duty to investigate information of potential partiality. "[W]e have declined to vacate awards because of undisclosed relationships where the complaining party should have known of the relationship, or could have learned of the relationship 'just as easily before or during the arbitration rather than after it lost the case.'" *Lucent Techs., Inc. v. Tatung Co.,* 379 F.3d 24, 28 (2d Cir. 2004) (citation omitted); see also *Kiernan v. Piper Jaffray Cos., Inc*., 137 F.3d 588, 593 (8th Cir. 1998) ("While they did not have full knowledge of all the relationships to which they now object, ***they did have concerns about [the arbitrator's] impartiality*** and yet chose to have her remain on the panel rather than spend time and money investigating further until losing the arbitration...The Kiernans cannot now seek to avoid their tactical decision to await the decision of the three member panel rather than seek [the arbitrator's] removal.").

*Dealer Comput. Servs. v. Michael Motor Co.,* 485 F. App'x 724, 728 n.4 (5th Cir. 2012) (emphasis added). Unlike the cases cited in *Dealer Computer Services, Inc*., Affordable was provided with an incomplete or untruthful disclosure that would not cause them to have any concerns about impartiality. Furthermore, Affordable did not, after the arbitration decision was made, independently investigate the arbitrator

just because they did not like the results and wanted a second bite of the apple. But rather, happened, by chance while counsel for Affordable was researching for another North Carolina based case. Finally, it is worth noting that North Carolina law requires vacatur in instances in which there is a failure to disclose.[1]

### C. The Fraud Was Materially Related to the Arbitration

The fraud, namely the undisclosed bias is materially related to the arbitration. Both Sun and the Arbitrator work for Duke Law School as co-workers, effectively have an attorney/client relationship, and have a significant professional and social relationship for which it is in the Arbitrator's best interest to maintain positively to further maintain the Winters Firm's financial support of the Arbitrator's law clinic. The Arbitrator essentially adopts, *word for word*, Appellees' brief in rendering his decision. Appellees even admit that this is discouraged by the court. *Midland Telecasting Co. v. Midessa Television Co.*, 617 F.2d 1141, 1141, n.5 (5th Cir. 1980).

### IV. Evident Partiality Demands that the Arbitration Award be Vacated

The Arbitrator's connections to Sun prior to and during the arbitration were clearly a "significant compromising connection." The failure to disclose the

---

[1] NC Gen Stat § 1-569.12 (2019)(e): "An arbitrator appointed as a neutral arbitrator who does not disclose a known, direct, and material interest in the outcome of the arbitration proceeding or a known, existing, and substantial relationship with a party is presumed to act with evident partiality under G.S. 1-569.23(a)(2)."

connections, on its own, is enough to warrant that the award be vacated pursuant to Section 10(a)(1) for fraud.

## A. Evident Partiality Was Never Waived

Appellees are correct in that neither party objected after the Arbitrator made his disclosure. That is because the disclosure made by the Arbitrator was not truthful and therefore did not amount to being enough to give cause for an objection or further investigation. Per this Court, the rule regarding waiver of evident partiality, "*only applies if the party had actual knowledge of the circumstances that form the basis of the objection.*" *Dealer Comput. Servs. v. Michael Motor Co.*, 485 F. App'x 724, 727 (5th Cir. 2012)(emphasis added). Such was not the case in this matter. Because the Arbitrator made an incomplete and untruthful disclosure, and Sun made no disclosure at all, Appellant was never afforded the information that would allow for actual knowledge of these circumstances. The Arbitrator only disclosed to probably having had one or more cases with Sun in his career, *but nothing in the last ten (10) years*. The Arbitrator made no mention of his other connections as co-faculty members *during* the arbitration nor did he mention the unique interest stemming from the Winters Firm being a benefactor of the Arbitrator's pro bono efforts. Had the Arbitrator or Sun, given a true, complete, disclosure of their relationship, then Affordable would have been presented with a reason to object and investigate. This however was not the case. The Arbitrator gave an untruthful and

incomplete disclosure, and Sun did nothing. As such, Affordable **certainly did not waive the objection of evident partiality**. The District Court's finding was made erroneously.

Appellees' reliance on *Dealer Computer Services, Inc. v. Michael Motor Company,* is distinguishable from this case for a very crucial reason: while the arbitrator in *Dealer* had, at the very least, disclosed to a prior arbitration relationship; in the instant matter, the Arbitrator's disclosure made no mention whatsoever of his relationship with Sun as co-faculty members or with regard to his pro bono connection and interests. *Dealer Comput. Servs. v. Michael Motor Co.,* 485 F. App'x 724, 728 (5th Cir. 2012).

### B. There is a Reasonable Impression of Bias Drawn from the Significant Compromising Relationship Between the Arbitrator and Sun and the Winters Firm

The fact that Sun, author of Appellees' brief, does not think his and his firm's undisclosed connections to the Arbitrator is not indicative of a significant compromising relationship holds no weight. Rather, Affordable sustained its burden in establishing, "specific facts from which a reasonable person would have to conclude that the arbitrator was partial to its opponent." *OOGC Am., L.L.C.*, 975 F.3d at 453.

The Arbitrator and Sun were co-workers and shared an attorney-client relationship by virtue of Sun's extensive and ongoing representation of Duke.

Furthermore, they shared a relationship for which it was in the Arbitrator's best interest to serve the interests of Sun for the sake of his position as the Director of the Social Justice Clinic for which the Winters Firm acts as benefactor. In compliance with the American Arbitration Association Code of Ethics for Arbitrators in Commercial Disputes, there was an obligation for the Arbitrator to disclose, "any facts which might affect [his] neutrality, independence, or impartiality." *See also Goswami v. DePaul Universit*y, 8 F. Supp. 3d 1004, *1015; 2014 U.S. Dist. LEXIS 37919, **28. The Arbitrator failed to do so. The relationship between Sun and the Arbitrator was known to the Arbitrator and was one that needed to be disclosed but was not. Thus, the standard of evident partiality is met herein and the Arbitration Award should be vacated.

Appellees claim that *Schmitz* involved an arbitrator's failure to disclose his firm's representation of one of the parties' parent companies in at least nineteen (19) cases over thirty-five (35) years. However, this observation carries no weight because Affordable has been denied a reasonable opportunity to conduct discovery as to the extent of the Arbitrator and Sun and the Winters Firm' relationship, Affordable cannot say just how similarly egregious the conflict and fraud is in this matter. *Schmitz v. Zilveti, 20 F.3d 1043 (9th Cir. 1994).*

**C. The Arbitrator Displayed Evident Partiality Throughout the Arbitration and in his Ruling**

The arbitration should be vacated under Section 10(a)(2) as the Arbitrator displayed evident partiality and bias throughout the arbitration and in rendering its decision. In fact, the decision and award are so contrary to the evidence and the prior rulings of this Court and include such a clear violation of the arbitrator's authority that the only reasonable conclusion is that the arbitrator was biased, and displayed "evident partiality" to Defendants due to the nature of his relationship with their counsel.

Soon after Sun's enrollment, the Arbitrator began granting Defendants significant procedural and substantive advantages including a continuance of the arbitration hearing based on the unavailability of his long-standing colleague, Sun.[2] Further, despite the fact that *no counterclaim had been asserted* by the Defendants and no evidence had been presented during the hearing, the Arbitrator *sua sponte* requested that Defendants submit evidence of attorney's fees. The Arbitrator subsequently granted Defendants an award of attorney fees in the amount of $379,168 and costs in the amount of $14,430.75 – an act which is so clearly outside the scope of his authority it can only be the result of bias or partiality. Finally,

---

[2] While Affordable acknowledges that this continuance was based upon an alleged purported injury that Sun sustained, other attorneys would have been available and just as familiar with the case given that Sun had, again only enrolled in this matter eight (8) days ago and had billed a total of only 7.7 hours to this long standing matter.

Defendants took a position with regard to waiver in the instant Court that completely contradicted the position they took at arbitration. Despite being fully aware of this Court's existing decision on the issue, the Arbitrator ruled in contradiction to this Court's judgment, and in favor of Defendants. This again can only be explained by evident bias.

## V. Misconduct By the Arbitrator Demands that the Arbitration Award be Vacated

Awards will be vacated where parties are not provided the opportunity to, "present evidence without unreasonable restriction" and "to confront and cross-examine witnesses." *ICAP Corporates, LLC v. Drennan*, 2015 WL 10319308, at *6 (D.N.J. Nov. 18, 2015) (citation omitted); see also *Konkar Mar. Enters., S.A. v. Compagnie Beige D'Affretement*, 668 F.Supp. 267, 271 (S.D.N.Y.1987). In the instant matter, the Arbitrator engaged in such misconduct when he refused to consider the evidence of the arguments and summary judgment on the issue of waiver.

Furthermore, the Arbitrator ignored key legal issues entirely in his Arbitration Decision. Specifically, the Arbitrator ignored the District Court's own ruling on the application of waiver and failed to adequately address such in his decision. If applied correctly, Affordable would have prevailed. Thus, this misconduct alone is grounds for vacating the Arbitration Award.

**VI.    The Arbitrator Exceeded his Powers thereby Demanding that the Arbitration Award be Vacated**

Again, Appellees never asserted any actual counterclaims seeking attorney's fees.  Per the case law cited in Affordable's original brief before this Court, an arbitrator exceeds his or her power when they issue an award on an issue that was not within their contractually established authority, and when their award is contrary to the terms of the contract between the parties.  Defendants' Answer to Affordable's amended arbitration demand did not include any counterclaims let alone counterclaims for fees.  At the arbitration hearing, Defendants did not present any exhibits or evidence relating to attorney fees.  This is because they had not asserted any counterclaims in their Answer.   However, following the first oral argument, the Arbitrator spontaneously and without notice indicated to the Appellees that they could submit evidence of their attorney fees.  In awarding attorney fees and costs that were not a part of a counterclaim at Arbitration, were not presented with any evidence or exhibits, and were contrary to governing North Carolina law, the arbitrator exceeded his authority.  As such, his decision and award must be vacated.

## <u>CONCLUSION</u>

For the forgoing reasons, the rulings and judgments of the district court should be reversed in its entirety.

LEWIS BRISBOIS BISGAARD & SMITH, LLP

/s/ Nancy A. Cundiff
NANCY A. CUNDIFF (LSBA #27974)
DAVID A. CAMPBELL (OH B #0066494)
CAROLINE J. SANCHES (LSBA #32975)
LEWIS BRISBOIS BISGAARD & SMITH LLP
400 Poydras Street, Suite 1300
New Orleans, Louisiana 70130
Telephone: 504-302-4100
Facsimile:  504-754-7569
Email:      nancy.cundiff@lewisbrisbois.com
            david.campbell@lewisbrisbois.com
            caroline.sanches@lewisbrisbois.com
        and


STEPHEN B. SIMPSON
PURVIS & CO. PLLC
14110 Airport Rd, Suite A
Gulfport, MS 39503
Telephone:  (228) 206-7174
Facsimile:   (601) 510-7794
Email: ssimpson@purviscolaw.com

**Attorneys for Affordable Care, LLC**

## CERTIFICATE OF SERVICE

In compliance with Federal Rule of Appellate Procedure 25(d)(3) and Fifth

Circuit Rule 25.2.5, I hereby certify that on July 5, 2022, I electronically filed the

BRIEF OF APPELLANT

with the Clerk of the United States Court of Appeals for the Fifth Circuit by using

the appellate CM/ECF system.


DATED:      August 25, 2022                    */s/ Nancy A. Cundiff*
                                               NANCY A. CUNDIFF

## <u>CERTIFICATE OF COMPLIANCE WITH THE TYPE-VOLUME LIMIT</u>

In compliance with Federal Rule of Appellate Procedure 32(g) and Fifth Circuit Rules 32.2 and 32.3, I certify that the foregoing Reply Brief of Plaintiff-Appellant complies with the type-volume limitations of Federal Rule of Appellate Procedure 32(a)(7)(B).

1.     This document complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(2)(b) because, excluding the parts of the document exempted by Federal Rule of Appellate Procedure 32(f) this brief contains *exactly* 6,315 words.

2.     This document complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because: this brief has been prepared in a proportionally spaced typeface using Microsoft Word 365 in Times New Roman, 14 point font.

DATED:     August 25, 2022                 */s/ Nancy A. Cundiff*
                                              NANCY A. CUNDIFF

# CERTIFICATE OF ELECTRONIC COMPLIANCE

I certify that (1) the required privacy redactions have been made, 5th. Cir. R. 25.2.13; (2) the electronic submission is an exact copy of the paper document, 5th Cir. R. 25.2.1; and (3) the document has been scanned for viruses with the most recent version of a commercial virus scanning program and is free of viruses. I will mail the correct number of paper copies of the foregoing document to the Clerk of the Court when requested.

DATED:     August 25, 2022          */s/ Nancy A. Cundiff*
                                    NANCY A. CUNDIFF